EUGENE L. SAUNDERS, Plaintiff-Appellee, *v.* NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District    No. 76-500

Opinion filed October 20, 1977.

Thomas W. Alvey, Jr., of Pope and Driemeyer, of Belleville, for appellant.

John T. Pierce, Jr., of Pratt, Pierce & Bradford, Ltd., of East Alton, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

The Norfolk and Western Railway Company, defendant, appeals from the judgment of the Circuit Court of Madison County entered on the jury's verdict in favor of Eugene L. Saunders in his action for damages brought under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.*).

The railroad assigns as error on review the denial of its motion to dismiss on the grounds of *forum non conveniens* and certain alleged trial errors which we shall discuss separately together with the evidence necessary to decide the questions presented.

Saunders was employed as a maintenance-of-way employee and was engaged in the work of replacing ties, rails and right-of-way surface when injured on September 6, 1974, at a location near DeWitt, Missouri. Saunders and a co-employee, James Oliver, were assigned as operators of a spiker machine, a self-propelled mechanical device that drives spikes into ties as it moves along the rails.

While plaintiff and his co-worker would be seated on two seats on the

spiker when operating the device, it was necessary to load spikes manually into a tray which was part of the machine. Kegs of spikes had been placed along the right-of-way at 50-tie intervals and to replenish the machine with spikes, the kegs would be rolled or carried by "long-handled timber tongs," a two-man carrying device, to a position in front of the spiker tray, immediately below the seats. Saunders and Oliver, positioned on either side of a keg, would then lift the keg, which weighed 200 pounds, approximately 18 inches off the ground to a position where the keg would rest on the edge or "lip" of the tray. The evidence was that because of the position of a seat post in the center of the tray, which allowed for one man operation of the machine, only one man could empty or dump a keg of spikes into the tray after the keg was so positioned. If both men attempted to dump a keg while positioned on either side of the keg there was a risk of their fingers and hands being injured on coming in contact with the center post and other parts of the apparatus.

At the time of the injury, plaintiff was in the process of dumping a spike keg into the tray. He immediately experienced pain in his back and leg, informed his co-worker, Oliver, and reported his injury to his foreman. Within a few days he received medical attention. Eventually, he was referred to a St. Louis orthopedic surgeon who performed a lumbar laminectomy on August 6, 1975. It was the opinion of his doctors that plaintiff was unemployable for maintenance-of-way work on the railroad or in any heavy industrial work. No question is raised concerning plaintiff's injuries or the amount of the verdict.

The railroad assigns as error the failure of the trial court to dismiss plaintiff's complaint on the ground of *forum non conveniens*. In its verified motion, the railroad stated that the occurrence giving rise to the suit occurred near DeWitt, Missouri, some 240 miles from Edwardsville, Illinois, where the action was filed; that the plaintiff as well as all occurrence witnesses were residents of Missouri residing in and around Moberly, Missouri, and all treating and examining physicians were residents of Missouri; that none of the witnesses were subject to the process of the Illinois courts, and in any event the expense and inconvenience of bringing these witnesses to Edwardsville, Illinois, would be great and would deny the railroad due process under the Constitution of the United States and the Constitution of the State of Illinois. The motion noted the existence of both Federal courts and Missouri courts of competent jurisdiction which sit at or reasonably near Moberly, Missouri. The motion concluded by stating that only plaintiff's attorneys resided in Madison County, Illinois, and that the trial of the cause in Madison County would be a burden and expense upon the court personnel and taxpayers of Madison County and the reviewing courts of Illinois and

would delay the disposition of litigation of residents of Madison County. The motion concluded by appending to it a list of cases filed by nonresident plaintiffs generally occurring near Moberly, Missouri, represented by the same counsel against the same railway.

Plaintiff's suggestions in opposition to the railroad's motion, while not controverting the significant factual allegations, pointed out that while the differences in mileage between Moberly, Missouri, and Edwardsville, Illinois, is 170 miles, Moberly is approximately 60 miles from the seat of the United States District Court at Hannibal, Missouri, and 65 miles from the court sitting at Jefferson City, Missouri, so that the distance considerations were relatively insignificant. Further, that the occurrence, preoccurrence and post-occurrence witnesses were all railroad employees who the defendant could produce at trial without the necessity of process; that plaintiff's principal treating physician practiced in St. Louis, Missouri, closer to Edwardsville, Illinois, than to Moberly, Missouri, and that the testimony of other attending physicians could be obtained by deposition, the usual practice; and finally that plaintiff's attorneys were regional attorneys for the Railroad Brotherhood of Maintenance-of-Way.

■■■ The plaintiff argues forcefully that the venue provision of the Federal Employers' Liability Act (45 U.S.C. §56) confers an absolute power or privilege on the injured employee to bring his action in any State or Federal court where the railroad "shall be doing business at the time of commencing such action," and that, being a federally conferred "right," a State court has no power to reject or dismiss such an action on considerations of *forum non conveniens*. Language in many Federal cases indicate that the right of the injured employee to select his forum is a substantial right (see *Boyd v. Grand Trunk Western R.R. Co.*, 338 U.S. 263, 70 S. Ct. 26, 94 L. Ed. 55 (1949); *Skultety v. Pennsylvania*, (S.D.N.Y. 1950), 91 F. Supp. 118), and we believe that in considering questions of *forum non conveniens* it is appropriate for trial courts to consider that the Act does express a policy that the injured employee has a substantial power to choose as a forum any court, State or Federal, where the railroad is doing business. However, we consider this precise question of the power of State courts to apply the doctrine of *forum non conveniens* to have been put to rest by the decision of the United States Supreme Court in *Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 95 L. Ed. 3, 71 S. Ct. 1 (1950). There the court held that State courts may decide the applicability of *forum non conveniens* to actions brought under the Federal Employers' Liability Act by nonresident plaintiffs to causes of action arising outside the forum State according to its own policy considerations, so long as this policy is likewise applied impartially to similar cases not arising under the Act.

■■ Following *Missouri v. Mayfield*, the Supreme Court of Illinois

decided *Cotton v. Louisville & Nashville R.R. Co.,* 14 Ill. 2d 144, 152 N.E.2d 385 (1958). After an exhaustive review of all Federal and State cases dealing with the question, the court held that the doctrine of *forum non conveniens* was applicable to Federal Employers' Liability Act cases arising "beyond the State's boundaries," but adopted a test that "only where it is shown that plaintiff is motivated purely by vexation and harassment will an F.E.L.A. case be dismissed." (14 Ill. 2d 144, 174, 152 N.E.2d 385, 400.) In *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan,* 30 Ill. 2d 178, 195 N.E.2d 634 (1964), the test enunciated in Cotton was disavowed. The court held that the proper factors to be considered were those enunciated in *Whitney v. Madden,* 400 Ill. 185, 79 N.E.2d 593 (1948), a libel action between nonresidents in which service had been obtained on defendant in Chicago while in transit. We consider, therefore, that Federal Employers' Liability Act cases are to be considered as any other case in the application of the doctrine of *forum non conveniens,* but that the appropriate considerations detailed in *Cotton* are still viable, except for the disapproved "vexation and harassment" test. In *Cotton* the court quoted with approval the language of Mr. Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67, S. Ct. 839, 843: "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Whitney v. Madden* stated that in applying the doctrine of *forum non conveniens,* the court should consider whether it is apparent that the local forum was chosen for the purpose of "frustrating" the defendant; whether the defendant is "unduly burdened" or caused "great and unnecessary inconvenience"; or whether the court is unnecessarily burdened.

What was stated or suggested in *Cotton, Donovan, Whitney* and other cases, was emphasized in *Fender v. St. Louis Southwestern Ry. Co.,* 49 Ill. 2d 1, 273 N.E.2d 353 (1971), the most recent opinion of the Illinois Supreme Court to consider the doctrine of *forum non conveniens* in relation to a Federal Employers' Liability Act case; and that is, "The discretion to be exercised in ruling on a *forum non conveniens* motion is that of the trial court." (49 Ill. 2d 1, 4, 273 N.E.2d 353, 355); that the trial court's decision on the motion will be overturned only if the reviewing court finds an abuse of discretion.

■■ In *Fender,* the accident occurred in Dallas, 870 miles from Belleville, Illinois, where the action was filed and the plaintiff and occurrence witnesses were residents of the Dallas area. The trial court dismissed the action and its decision was upheld. The relevant facts present here have been recited. We would simply add that the trial of the case did not present the difficulties predicted by defendant in its motion. It would appear that plaintiff and defendant produced those witnesses

deemed important at trial without difficulty. Dr. Schoedinger, plaintiff's principal treating physician, appeared at trial, and it is interesting to note that defendant did not choose to depose the two doctors who treated plaintiff at Moberly and Columbia, Missouri, nor Dr. Schoedinger, nor did defendant obtain a medical examination of plaintiff by a doctor of its choosing. We find no abuse of discretion in the trial court's denial of defendant's motion to dismiss for *forum non conveniens.*

Defendant assigns as error the granting of plaintiff's motion to amend at the close of plaintiff's case by adding as an allegation of negligence the defective design or condition of the spiker machine and the refusal of the trial court to allow counsel for defendant to interview its employee Oliver prior to his testifying on behalf of plaintiff. As these allegations of error are interrelated, we shall consider them together.

Plaintiff's complaint alleged as negligence, as here relevant, the failure to provide plaintiff a reasonably safe place to work and the failure to furnish "tie tongs" for lifting the kegs of spikes. At trial, plaintiff testified that he experienced pain in his leg and back, not as he and his co-worker Oliver were lifting the keg onto the rim of the spiker tray but after Oliver had stepped back and the plaintiff was in the process of dumping the spikes into the tray. Both plaintiff and Oliver testified this one man dumping procedure was necessitated because of the presence of a center seat post through the spiker tray. At the close of plaintiff's case, the court allowed plaintiff to add as an allegation of negligence defendant's failure "to remove the center seat posts [*sic*] from the tray of the spiker machine which caused an obstacle necessitating that plaintiff lift a keg of spikes without help in order to remove said spikes from said keg."

Defendant states it became aware of this added claim of negligence shortly before trial commenced; that until that time, plaintiff's case was predicated on the railroad's failure to furnish tie tongs to lift the spike kegs; and that when it learned of the additional allegation of negligence it became necessary for it to discuss this charge with plaintiff's co-worker, Oliver, prior to his testimony.

Oliver had appeared voluntarily as a witness for plaintiff. Defendant claims that it was unable to talk to Oliver prior to his testifying as he was "closeted" with plaintiff's attorneys who would only "allow" defendant's counsel to interview him in the presence of plaintiff's counsel. The court ruled that it would order or compel an interview by defendant's counsel only if plaintiff's counsel were present, an offer defendant declined to accept.

Defendant acknowledges that Illinois law vests the trial court with discretion to allow amendments to pleadings at any time in order to conform the pleadings to the evidence (Ill. Rev. Stat. 1975, ch. 110, par. 46), but argues that the court abused its discretion in allowing an

amendment asserting a "new theory of liability against defendant." Apparently defendant suspected that this theory of liability would be asserted as it claims the error was exacerbated by the refusal of the trial court to compel plaintiff's co-worker Oliver to be interviewed concerning this very matter so that defendant could properly prepare its cross-examination of Oliver on the subject concerning which it now claims unfair surprise, that is, the presence of the center seat post in the spiker tray.

Plaintiff's objection was that it would be unfair to compel a 23-year-old employee of defendant to subject himself to such an interview immediately prior to trial after plaintiff's trial strategy had been formulated and Oliver's testimony had been discussed with plaintiff's counsel.

■■■ Defendant was certainly aware that Oliver would be a witness for plaintiff; it does not claim otherwise. Shortly after the occurrence defendant's claim's agent took a detailed statement concerning the accident from Oliver, as did plaintiff at a later date. Defendant had copies of both statements in its possession. Defendant did not choose to depose Oliver. Five or six days prior to trial defendant's counsel traveled to DeWitt, Missouri, interviewed Oliver and observed a spiker machine. Oliver was an employee of defendant. There has been no showing that Oliver ever declined to talk to defendant's counsel. While we realize that the trial court has broad powers under the rules to control discovery we certainly cannot say that the court abused its discretion in failing to compel Oliver to discuss his testimony in private with counsel for defendant immediately prior to trial where there has been no showing that the witness desired to engage in such an interview. In fact, we might question the propriety of compelling an "interview" under these circumstances without the presence of plaintiff's counsel.

■■ Plaintiff states that, in fact, Oliver's testimony was substantially the same as his pretrial statements. Furthermore, defendant admits that a defect in the condition of the spiker machine, such as the presence of the center post in question, could be proved and argued to the jury as negligence under the general allegation in the complaint that defendant failed to furnish plaintiff a reasonably safe place to work. Defendant never challenged this allegation as too general or sought by appropriate pleading that the allegation of negligence be made more definite and certain. The subject of the center post and the effect it had on the manner in which spikes were placed in the spiker tray was brought out during plaintiff's deposition taken well in advance of trial. Substantial testimony was introduced concerning the center post without objection during the presentation of plaintiff's case. In fact, when the amendment was offered during trial, defendant did not object on the basis of surprise, but on the

ground that the evidence did not support the amendment. This claim is not made on appeal. We find no error or abuse of discretion in the trial court's ruling in allowing the amendment to the complaint (see *Powers v. Strum,* 12 Ill. App. 3d 346, 297 N.E.2d 628 (1973)) and in denying defendant's request that the witness Oliver submit to an interview by counsel for defendant.

■■ Defendant complains that the court should not have permitted plaintiff to call one Kenneth Sly as an adverse witness (Ill. Rev. Stat. 1975, ch. 110, par. 60). Sly testified that he was presently employed as a foreman; section 60 of the Civil Practice Act states that any foreman may be called as an adverse witness. Defendant complains that the court refused to allow the defense to show that Sly was in fact not unfriendly to plaintiff's cause by showing that he came to Alton, Illinois, voluntarily to testify on behalf of plaintiff. If this was defendant's purpose, the record is not entirely clear, and while we think the court may have allowed defendant to show that the witness was, in fact, not adverse or hostile to plaintiff, it must have appeared obvious to the jury that Sly was not unfriendly to plaintiff. The scope of further examination of a witness called as an adverse witness is within the sound discretion of the trial court. Generally it should be limited to explanation and qualification of matters brought out on cross-examination of the adverse witness. In any event, we find no error or abuse of discretion in the court's ruling.

■■ Over defendant's objection, plaintiff was allowed to read to the jury from defendant's surgeon's manual. The manual stated that "there is no light duty on the railroad." Defendant claims this was improperly admitted as an admission since plaintiff's physical condition and ability to continue to work for the railroad as a maintenance-of-way employee were not disputed by defendant and were therefore not issues in the case. Defendant contends the admission of such evidence constitutes reversible error under the rule of *Littlefield v. Alton & Southern R.R. Co.,* 96 Ill. App. 2d 470, 239 N.E.2d 147 (1968). However, in *Littlefield,* the admission of the evidence complained of suggested that plaintiff's eye was not injured when in fact there was no dispute but that plaintiff without the use of glasses was blinded in his right eye. Here if the matter admitted did not contradict an admitted fact and if the content of the sentence from the surgeon's manual was not at variance with defendant's position at trial, then the ruling was harmless error at most. However, defendant did contend that plaintiff was capable of performing "light work" in some industry and occupation. In fact, when the evidence was offered, defendant did not object on the basis that the railroad rule stated in the manual could not constitute an admission, rather that it did not accurately express railroad policy and that individuals with plaintiff's injury were employed, apparently in "light duty" for defendant. The

objection now made was not specified at trial and accordingly cannot now be argued as error on appeal. Under these circumstances we believe plaintiff could show that there was no such work available on the railroad and that plaintiff could not return to work on the railroad but must seek employment elsewhere. Plaintiff's physical condition was a fact in issue; defendant's pleadings had denied that plaintiff was injured to the extent claimed in his complaint. We believe that plaintiff could properly attempt to establish in his case in chief that he could not return to railroad work if the jury believed he was injured to the extent claimed. (*Maltby v. Chicago Great Western Ry. Co.*, 347 Ill. App. 441, 106 N.E.2d 879 (1952).) At this juncture it could not be said that the rule stated in the manual would not contradict a position that defendant would urge in defense.

Defendant complains that error was committed when Dr. Schoedinger was allowed to express an opinion in response to a hypothetical question after he had testified based upon a medical history related by the plaintiff.

Dr. Schoedinger stated, in general terms, that plaintiff related a history of injuring his back as he was lifting the keg of spikes. In fact plaintiff testified he felt pain in his back and leg after the keg had been raised and as he was in the process of dumping the spikes into the spiker tray.

The thrust of Dr. Schoedinger's testimony, however, was simply that he may have been in error as to what plaintiff told him, or the actual medical history related to him by plaintiff, as to the time plaintiff experienced the pain, but notwithstanding when plaintiff may have first complained of pain, that in his opinion, based on the hypothetical question which incorporated plaintiff's statement as to experiencing pain as the spikes were being dumped into the spiker tray, plaintiff was injured as the keg was being lifted from the ground, not as the spikes were being dumped into the tray.

■■ While an expert may not base his opinion on facts not in evidence, he may express his opinion in any form so long as he is not required to decide any controverted factual question and thus invade the province of the jury. (*Clifford-Jacobs Forging Co. v. Industrial Com.*, 19 Ill. 2d 236, 166 N.E.2d 582 (1960).) An expert may base his opinion on personal observation, hypothetical question or both. *Sherman v. City of Springfield*, 77 Ill. App. 2d 195, 222 N.E.2d 62 (1967).

Based both on personal observation and facts hypothetically stated, Dr. Schoedinger consistently expressed an opinion that the plaintiff injured his back while in the process of lifting the keg of spikes notwithstanding plaintiff's testimony that he experienced pain at a later time. The doctor was consistently of the opinion that under these circumstances the person injured would not know when the injury was received and that, in his opinion, the injury would more likely occur at a time when the back was in flexion, as in lifting a heavy object.

Dr. Schoedinger's testimony was not subject to defendant's complaint. Neither his opinion based in the medical history given him by plaintiff, nor his opinion based on the hypothetical question assumed facts not in evidence or were based on facts not in evidence or even on any controverted facts. The only matter controverted was when plaintiff was in fact injured, while lifting the keg or at a later time. The doctor's expert opinion was that plaintiff was injured while lifting the keg; the fact that plaintiff experienced pain later would only affect the weight to be accorded the doctor's testimony, and this matter was fully explored by defendant on cross-examination. The jury need not accept the doctor's opinion, but where the facts are undisputed, as here, the opinion may be expressed on the issue of the cause of plaintiff's injury. The facts upon which Dr. Schoedinger based his opinion were in evidence. We find no error in the admission of his testimony. See *Beloit Foundry v. Industrial Com.* 62 Ill. 2d 535, 343 N.E.2d 504 (1976); *Wirth v. Industrial Com.*, 57 Ill. 2d 475, 312 N.E.2d 593 (1974); 2 Wigmore, Evidence §673 *et seq.* (3d ed. 1940).

■■ Lastly, defendant assigns as error the refusal of the trial court to instruct the jury that any award plaintiff received would not be subject to federal income taxation. Defendant cites for our consideration *Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284 (9th Cir. 1975), where the court approved the giving of such an instruction under certain circumstances; however, whatever the persuasiveness of the reasoning of *Boxberger*, we consider the matter put to rest in Illinois, and we are obliged to follow the holdings of our supreme court in *Hall v. Chicago Northwestern Ry. Co.*, 5 Ill. 2d 135, 125 N.E.2d 77 (1955), and *Raines v. New York Central R.R. Co.*, 51 Ill. 2d 428, 283 N.E.2d 230 (1972). We find no error in the refusal to give the tendered instruction.

The judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

CARTER, P. J., and EBERSPACHER, J., concur.