LISA PROCHNOW, Plaintiff-Appellee, v. EL PASO GOLF CLUB, INC., Defendant-Appellant.

Fourth District   No. 4—93—0107

Argued September 14, 1993.—Opinion filed October 14, 1993.—
Modified on denial of rehearing December 30, 1993.

388

Bradley W. Dunham (argued) and Scott R. Paulsen, both of Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellant.

James P. Ginzkey (argued), of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Lisa Prochnow sued defendant El Paso Golf Club, Inc., to recover damages for personal injuries sustained as a result of the negligence of defendant. The complaint alleged plaintiff was struck in the head by a golf ball while she was a patron on the rear deck of defendant's clubhouse. Following a jury trial conducted in the circuit court of Woodford County, the jury returned a verdict in favor of plaintiff and against defendant in the amount of $32,131.88. After applying a $5,000 setoff for payment made on behalf of James Anthony Haas, the golfer who hit the ball, the trial court entered judgment in favor of plaintiff and against defendant in the amount of $27,131.88. Defendant appeals.

Eight issues are raised on appeal. (1) Was plaintiff's claim time-barred by the statute of repose relating to the construction of improvements to real property? (Ill. Rev. Stat. 1989, ch. 110, par. 13—214(b).) (2) Did the trial court improperly refuse to consider a written motion for a directed verdict in favor of defendant after already considering an oral motion for directed verdict, and if that occurred, was it reversible error? (3) Was defendant entitled to a directed verdict or judgment *n.o.v.* because plaintiff's comparative negligence was more than 50% of the cause of her injuries, or was the jury's finding as to plaintiff's negligence against the manifest weight of the evidence? (4) Was defendant entitled to a directed verdict or judgment *n.o.v.* because plaintiff failed to sustain her burden of proof as to (a) the condition creating an unreasonable risk of harm, (b) defendant being required to anticipate that plaintiff would discover an open and obvious danger and protect herself otherwise, (c) proximate causation, (d) defendant's knowledge of the risk, and (e) defendant was negligent? (5) Did the trial court err by giving, over defendant's objection, plaintiff's instruction No. 13A as the issues instruction? (6) Did the trial court err by refusing to give defendant's instruction No. 4 with regard to the failure of plaintiff to produce a witness? (7) Did the trial court err in refusing to allow defendant to attempt to impeach plaintiff with contradictory testimony given in her discovery deposition? (8) Did the trial court err by admitting into evidence photographs of the siding of defendant's clubhouse? We affirm.

Before addressing the issues on the merits, we address the following motions taken with the case: (1) plaintiff's motion to supple-

ment the record on appeal; (2) defendant's objection to the motion to supplement the record, combined with defendant's motions to strike a portion of plaintiff's appellee brief and to restrict appellate argument; (3) defendant's motion to strike a portion of the statement of facts in the appellee brief and the argument based thereon; and (4) plaintiff's motion pursuant to Supreme Court Rule 375 (134 Ill. 2d R. 375) for costs and attorney fees on appeal.

█ Plaintiff moves to supplement the record pursuant to Supreme Court Rule 361 (134 Ill. 2d R. 361) with an affidavit from one of her attorneys, James P. Ginzkey. The affidavit states (1) plaintiff's brother-in-law Jerry Prochnow was present in the courthouse on the first day of trial; (2) plaintiff's counsel chose not to call him as a witness; (3) in order to avoid defendant requesting an instruction on the failure to call a witness (Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992)) (hereinafter IPI Civil 3d), plaintiff offered to allow defendant to call Jerry Prochnow as a witness out of order; (4) that offer was made in the presence of the trial judge, but outside the presence of the jury or the court reporter; (5) defendant's counsel declined the offer; (6) plaintiff originally sued defendant in Woodford County case No. 90—L—26, which was voluntarily dismissed (Prochnow v. El Paso Golf Club, Inc. (Cir. Ct. Woodford Co.), No. 90—L—26) and later refiled as Woodford County case No. 91—L—29; (7) plaintiff was deposed in both actions; (8) attached to the motion was a copy of the discovery deposition of plaintiff dated February 25, 1991, taken in case No. 90—L—26; (9) also attached was a copy of the discovery deposition of Haas, taken February 13, 1992.

The affidavit of Ginzkey has two parts relating to (1) the offer to allow defendant to call Jerry Prochnow out of order and (2) the discovery depositions. With reference to the offer of a witness, although Rule 361 specifies the form motions are to take and Rule 329 allows for amendment of the record on appeal, Rules 323(c) and (d) are really the governing rules here. (134 Ill. 2d Rules 329, 323(c), (d).) Plaintiff should have offered an agreed statement of facts or a bystander's report to establish what occurred in the trial court where no verbatim transcript was available. The affidavit is not an agreed statement of facts and fails as a bystander's report because the proper procedure for obtaining trial court approval was not utilized under Rule 323(c).

In *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 415, 259 N.E.2d 282, 289, in an effort to show that the defendant was denied an opportunity to be heard, defendant's counsel filed an affidavit as an appendix to his brief. However, the Illinois Supreme Court refused to consider it as the affidavit was not filed in the trial court and was

not part of the record. In *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 497-98, 531 N.E.2d 51, 61, this court stated that an attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystander's report and, therefore, refused to consider the allegation relating to those issues.

The second part of the affidavit refers to the discovery depositions. Rule 329 authorizes supplementation of the record only with documents which were actually before the trial court, and exhibits or depositions which were never filed in the trial court or considered by the trial judge will not be considered on appeal. (*James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 451-52, 510 N.E.2d 531, 532-33; *Nameoki Township v. Cruse* (1987), 155 Ill. App. 3d 889, 895, 508 N.E.2d 1080, 1084.) There is nothing in plaintiff's motion or the attached affidavit which suggests these depositions were before the trial court. Nor has plaintiff responded to defendant's objection. Therefore, the motion to supplement the record is denied.

■ As to the defendant's multiple motions to strike the plaintiff's appellee brief because portions of it were based on matters not in the trial record, those motions are denied as moot. This court does not rely in any way on facts which were not of record or consider any argument based on matters outside the record. (*Thacker v. U N R Industries, Inc.* (1992), 151 Ill. 2d 343, 353, 603 N.E.2d 449, 454.) The defendant's motion to restrict oral argument is also denied as moot as no references were made during oral argument to matters not included in the record. Plaintiff's motion for appellate costs and attorney fees pursuant to Rule 375 is denied.

The parties and this court are well aware of the facts of this case. Only those facts necessary to an understanding of the analysis of the issues will be discussed.

■ The first issue is whether plaintiff's claim was time-barred by the statute of repose relating to the construction of improvements to real property. (Ill. Rev. Stat. 1989, ch. 110, par. 13—214(b).) Defendant did not plead the statute of repose as an affirmative defense.

> "Affirmative defenses must be pleaded with the same factual specificity as other pleadings and are subject to the same attacks as other pleadings for factual deficiencies. Ill. Rev. Stat. 1989, ch. 110, par. 2—613; see also *Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 388 N.E.2d 217 (for the general rules pertaining to the determination of whether a pleading is sufficient)." (*Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 929, 588 N.E.2d 1193, 1223.)

In *Harris v. Harris* (1990), 196 Ill. App. 3d 815, 825, 555 N.E.2d 10, 17, the court stated:

"Ordinarily, a party will not be permitted to argue on appeal a defense not interposed by his answer. The fact that certain evidence lends support to the defense does not mitigate the force of this rule. In any action before the trial court, '[t]he proof presented is determined largely by the pleadings, the issues, and the theories there made.' (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 138, 213 N.E.2d 89.)"

A reviewing court may affirm for any reason which appears of record, even if the trial court did not rely on it. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.

The defense based on section 13—214(b) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 13—214(b)) was not raised by defendant until its oral motion for directed verdict at the close of all the evidence. The trial court granted the motion as to the allegation of negligence based upon construction of the deck. The propriety of granting the motion in part is not before this court as plaintiff has not cross-appealed. As to the failure of defendant to plead the affirmative defense, defendant argues plaintiff waived its failure to do so. We need not address the waiver issue.

The complaint of plaintiff as presented to the jury for its deliberations does not concern an action for an act or omission of the defendant in the design, planning, supervision, observation or management *of construction, or construction of an improvement to real property*. In her complaint, plaintiff alleged that defendant operated a golf course and clubhouse which was open to the general public. The deck of the clubhouse extended to the north edge of the clubhouse. On July 28, 1988, while on the deck, the plaintiff was struck in the right temple with a golf ball. The complaint alleged that defendant was negligent because, although its agents and employees knew the northwest corner of the clubhouse and the north edge of the deck had been repeatedly struck by golf balls, defendant (1) constructed the deck so as to be unprotected from the seventh tee; (2) failed to construct a screen, fence, or other barrier on the north end of the deck; (3) failed to erect a screen or fence or other barrier between the deck and seventh tee; and (4) failed to extend or enlarge the existing screen between the deck and the seventh tee. As stated heretofore, the trial court granted defendant a directed verdict as to the first of these allegations, on the ground that it was barred by section 13—214(b) of the Code. The remaining allegations concern the "failure to construct,"

rather than the negligent construction of an improvement to real estate.

Plaintiff's allegations do not incorporate a charge that defendant was responsible for the deck and fence being designed or constructed negligently. The allegations of the complaint are based on the ownership of the property rather than on any of the enumerated activities in section 13—214 of the Code. A section 13—214(b) defense is not available to a defendant being sued as a landowner.

In *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 467 N.E.2d 363, this court found that owners did not have the protection of ˚section 13—214 of the Code. Although *C.S. Johnson* refers to owners, regardless of their status, to be excluded from the Act, the supreme court in *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 261, 500 N.E.2d 34, 37, clarified the *C.S. Johnson* decision in stating: "The current statute, however, does not exclude persons based upon their status. It protects, on its face, anyone who engages in the enumerated *activities.*" (Emphasis in original.)

In a third district case, reference is made to a previous decision which observed that the legislative history described section 13—214 of the Code " 'as an effort to circumscribe the potentially unlimited tort liaiblity of those who design and construct buildings.' " *Blackwood v. Rusk* (1986), 148 Ill. App. 3d 868, 871, 500 N.E.2d 69, 71, quoting *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 615, 483 N.E.2d 613, 617.

We also agree with the statement made by the appellate court in *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1985), 135 Ill. App. 3d 765, 772, 482 N.E.2d 155, 160:

"It is clear, however, that the immunities granted by the present statute are limited to those persons who have engaged in the design, planning, supervision, observation or management of construction or construction of the improvement and all other persons, owners, tenants, persons in possession or control and suppliers of material are still excluded from the benefits of the statute although they may also be exposed to liability by reason of construction defects."

The plaintiffs' allegations of negligence do not place defendant as one engaged in the enumerated activities protected by the provisions of section 13—214(b) of the Code.

■ The second issue is whether the trial court improperly refused to consider a written motion for a directed verdict in favor of defendant, after already considering an oral motion for directed verdict, and,

if so, whether it was reversible error. Defendant argues that section 2—1202(a) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(a)) does not bar successive motions for directed verdict. Defendant contends the trial court erred in refusing to consider the written motion for directed verdict after the trial court ruled on an oral motion made at the close of all the evidence and which defendant's counsel represented to be the entire motion for directed verdict. The written motion included the arguments made in the oral motion, but added additional points not included in the oral motion.

Section 2—1202(a) of the Code provides:

"If at the close of the evidence, and before the case is submitted to the jury, any party moves for a directed verdict the court may (1) grant the motion or (2) deny the motion or reserve its ruling thereon and submit the case to the jury. If the court denies the motion or reserves its ruling thereon, the motion is waived unless the request is renewed in the post-trial motion." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(a).)

This statute does not allow a party to make multiple motions for directed verdict after the close of the evidence. Defendant's counsel was given an opportunity to state that there were additional grounds to be asserted in his motion for directed verdict, or that a written motion for directed verdict was forthcoming. Defendant made no such statement and indicated that the oral motion contained all the points it intended to raise. Once the trial court ruled on the oral motion for directed verdict, it was not an abuse of discretion for the court to decline to consider the subsequent written motion for directed verdict which defendant tried to present. As the trial judge pointed out, if he had to wait for successive motions, the instructions conference would not be held in an expedited fashion as the jury instructions could not be finalized. In any event, defendant was not prejudiced as the same issues raised in the written motion for directed verdict were raised in the post-trial motion for judgment *n.o.v.*, and the motion for judgment *n.o.v.* was considered and denied. As will be discussed, the same standard applies for determining the merits of both types of motions.

■ The third issue is whether the defendant was entitled to a directed verdict or judgment *n.o.v.* because plaintiff's comparative negligence was more than 50% of the cause of her injuries, or whether the jury's finding as to plaintiff's negligence was against the manifest weight of the evidence. When the evidence, viewed in its aspects most favorable to the opponent of a motion for directed verdict or for judgment *n.o.v.*, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand, then the ver-

dict may be directed or a judgment *n.o.v.* entered. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) If there is any evidence or reasonable inferences which may be drawn from the evidence demonstrating a substantial factual dispute or if the assessment of witness credibility or a determination of conflicting evidence is decisive, a judgment *n.o.v.* is inappropriate. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512.) It is not sufficient for a judgment *n.o.v.* that the verdict was against the manifest weight of the evidence. (*Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512.) However, a new trial may be granted if the verdict is against the manifest weight of the evidence. A verdict is considered to be against the manifest weight of the evidence if the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary, and not based on any of the evidence. *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13.

If the contributory fault of plaintiff was more than 50% of the proximate cause of her injury, plaintiff would be barred from recovering. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116.) Defendant's theory of this case is that plaintiff virtually invited the injury. Plaintiff had played and watched golf and understood that while on a golf course, there was the possibility that a person could be struck by a golf ball. On July 28, 1988, plaintiff was standing at the railing of a deck adjacent to the defendant's clubhouse. She was watching golfers tee off from the seventh tee. Haas, in teeing off from the seventh tee, mishit the ball so badly that it flew at plaintiff in a line drive and struck her in the head. Plaintiff watched Haas very closely and watched the ball. She testified it came at her so fast she could not move out of the way. It is defendant's contention that plaintiff intentionally exposed herself to an obvious risk and even aggravated the situation by leaning over the railing so she could not quickly duck to safety behind the clubhouse. Plaintiff denies she was leaning over the railing and stated she was standing with her hands on the railing when the ball was hit by Haas. The jury's finding that plaintiff was not contributorily negligent was not against the manifest weight of the evidence, and the defendant was not entitled to a judgment *n.o.v.* or directed verdict on this ground.

■ The fourth issue is whether defendant was entitled to a directed verdict or judgment *n.o.v.* because plaintiff failed to sustain her burden of proof. After applying the *Pedrick* standard, this argument by defendant also does not have merit.

In this case, the jury was instructed that the plaintiff had the burden of proving that (1) there was a condition of the defendant's prop-

erty which presented an unreasonable risk of harm to persons on the premises; (2) the defendant knew, or in the exercise of ordinary care should have known, that the condition of its property involved an unreasonable risk of harm to persons on the premises; (3) the defendant should have anticipated that persons on the premises would not discover or realize the danger, or would otherwise fail to protect themselves against it; (4) the defendant acted or failed to act in one or more of the ways stated in these instructions and that in so acting or failing to act, the defendant was negligent; (5) the plaintiff was injured; and (6) the condition of defendant's property was a proximate cause of the injury to the plaintiff. (Illinois Pattern Jury Instructions, Civil, No. 120.09 (3d ed. 1992).) As part of the issues instruction, the jury was informed that plaintiff claimed defendant was negligent by failing to (1) erect a screen, fence or other barrier between the rear deck of the clubhouse and the seventh tee so as to protect the north end of the rear deck of the clubhouse; (2) construct a screen, fence or other barrier on the north end of the rear deck of the clubhouse; and (3) extend or enlarge the screen existing between the seventh tee and the clubhouse so as to protect the north edge of the rear deck of the clubhouse.

In a negligence action, the plaintiff must prove that the defendant owed a duty, that defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff. Whether a duty exists is a question of law for the court to decide, and among the factors which are relevant to the existence of a duty are reasonable foreseeability, the likelihood of injury, and the extent of the burden placed upon the defendant in guarding against an injury. Foreseeability has been defined as that which it is *objectively reasonable* to expect, not merely what might conceivably occur. If a possessor of land (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger, he is subject to liability for physical harm caused to his invitees by a condition on the land. If the danger is known or obvious, the possessor of the land may not be liable to invitees. However, in the event the possessor of land can and should anticipate that the dangerous condition will cause physical harm to an invitee notwithstanding its known or obvious danger, he will not be relieved of the duty of reasonable care which is owed for the protection of the invitee. This duty may require giving the invitee a warning, or the taking of other

reasonable steps to protect the invitee. A reason to expect harm to the visitor from known or obvious dangers may arise where there is reason to expect that the invitee's attention may be distracted. Distracted invitees may not discover what is obvious, forget what has been discovered, or fail to protect themselves against the dangerous condition. Not only are breach of duty and proximate causation questions of fact, but whether the condition itself served as adequate notice of its presence, or whether additional precautions were required to satisfy the defendant's duty, are questions properly left to the trier of fact. *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 25-30, 594 N.E.2d 313, 318-20.

> "In determining the scope of defendant's duty, the focus is on the defendant. (*Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.) 'The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen injury to plaintiff.' (Emphasis in original.) (*Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230, citing *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) However, '[t]he creation of a legal duty requires more than a mere possibility of occurrence.' *Cunis*, 56 Ill. 2d at 376, 308 N.E.2d at 619." *Dinkins v. Ebbersten* (1992), 234 Ill. App. 3d 978, 985, 600 N.E.2d 873, 877.

It would be reasonably foreseeable that patrons of defendant's bar and dining room would walk out onto the deck, with refreshments in hand, socializing with other persons, stand next to the railing around the deck, and in particular at the north end of the deck, and be struck by a wayward golf ball. The deck, being located next to the bar room, with tables and chairs on it, invites such activity. Moreover, it is very likely that the patrons could be distracted by conversation from other patrons or by other activities on the golf course such that the danger of being struck by a ball hit from the seventh tee might not be anticipated. Therefore, there is an unreasonable risk of harm. See *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 197-98, 415 N.E.2d 1099, 1103 (in which a summary judgment in favor of the country club was reversed where the plaintiff, a spectator at a professional golf tournament, was struck by a golf ball while standing at a concession stand located between two fairways).

In the case at bar, the defendant had already placed a fence near the seventh tee to offer some protection to the clubhouse and patrons around the clubhouse. The danger was foreseeable. Given the location of the deck, the seventh tee, and the direction of the fairway away

from the clubhouse, it would not be obvious to all patrons of defendant's clubhouse that a golf ball might be so badly misstruck as to travel toward the clubhouse from the seventh tee. Defendant had a duty to protect its patrons on the clubhouse deck from being injured in the manner plaintiff was injured.

Proximate causation, defendant's knowledge of the risk, and defendant's negligence are all questions of fact which the jury found in favor of plaintiff. In addition, the jury found plaintiff was not contributorily negligent. These findings have evidentiary support, and defendant is not entitled to a judgment *n.o.v.* under the *Pedrick* standard.

As to proximate causation, defendant specifically argues that the negligence of Haas broke the causal connection between defendant's negligence and the injury or that the condition of defendant's golf course merely created a passive condition that was not the cause of the injury. In *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294, the Illinois Supreme Court distinguished between condition and causation as follows:

> " 'The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for causal agencies to act.' If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 306.
>
> Proximate cause is also absent where the independent acts of a third person break the causal connection between the alleged original wrong and the injury. When that occurs, the independent act itself becomes a proximate or immediate cause. *Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 950-51; *Moudy v. New York, Chicago & St. Louis R.R. Co.* (1944), 385 Ill. 446, 452-54; *Briske v. Village of Burnham* (1942), 379 Ill. 193, 199-201."

Defendant's negligence need only be a proximate cause, and not the sole proximate cause of plaintiff's injury, and the jury was so instructed. The negligence of Haas did not break the causal connection between defendant's negligence and plaintiff's injury. As to defendant's argument that it merely created a condition that made the injury possible, it is the failure to protect plaintiff against a danger arising from a condition of the premises which the jury found to be the negligence of defendant in this case. If the failure to protect an invitee from an unreasonably dangerous condition on the premises only creates a condition, property owners would rarely be liable.

■ The fifth issue is whether the trial court erred by giving, over defendant's objection, plaintiff's instruction No. 13A as the issues instruction. The argument of defendant rests on the denial, in part, of the oral motion for directed verdict and the refusal to consider the later written motion for directed verdict, and in particular, to the applicability of the statute of repose to the case at bar. Therefore, the giving of this instruction would only be error to the extent this court found error with regard to issues previously discussed. No such error having been found, the giving of this instruction was not error.

The sixth issue is whether the trial court erred by refusing to give defendant's instruction No. 4 with regard to the failure of plaintiff to produce a witness.

"IPI Civil 3d No. 5.01 allows an adverse inference to be drawn from the failure of the party to produce a witness if (1) the witness was under the control of the party and could have been produced with reasonable diligence; (2) the witness was not equally available to an adverse party; (3) a reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him; and (4) no reasonable excuse for the failure to produce the witness has been shown. *** 

*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 201-02, 549 N.E.2d 1295, 1304, summarized the standard used for determining when IPI Civil 3d No. 5.01 is appropriate. The giving of IPI Civil 3d No. 5.01 rests in the sound discretion of the trial court, and reviewing courts will reverse only when a clear abuse of discretion is demonstrated. Prior to giving the instruction, the trial court must ascertain whether, in all likelihood, the party would have produced the witness under the facts and circumstances of the case unless the testimony would be unfavorable. For example, if the witness' testimony would be cumulative of facts already established, the instruction is not warranted." *Betts*, 225 Ill. App. 3d at 900-01, 588 N.E.2d at 1205.

Jury instructions are provided to inform the jury of the correct principles of law which apply to the evidence presented. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1092.) On appeal, a new trial will be granted based on a trial judge's refusal to provide a tendered instruction only when the refusal amounts to a serious prejudice to the party's right to a fair trial. *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 200,

549 N.E.2d 1295, 1303; *Village of Pawnee v. Azzarelli Construction Co.* (1989), 183 Ill. App. 3d 998, 1023, 539 N.E.2d 895, 910.

Defendant's attorney explained that the instruction was tendered because plaintiff's brother-in-law, Jerry Prochnow, was not called by plaintiff to testify. Plaintiff objected because the testimony would be merely cumulative and that witness had been available to defendant when he was at trial on Monday. The trial court ruled that given the witness' relationship to plaintiff, the witness was not equally available to defendant and he was likely to be biased.

According to defendant's counsel, Jerry Prochnow would testify that plaintiff was the only one in the group who was ever over at the short railing, that they were standing as a group at the long railing when plaintiff walked over to the short railing and the others remained at the long rail of the deck. Plaintiff was on the deck with her husband Jeffrey, his brother Jerry, and Jerry's wife Deborah. The defendant argued that the testimony of Deborah Prochnow and Mike Peterson, who was a golfer in Haas' foursome, contradicted what Jerry Prochnow would say regarding whether the entire Prochnow group went to the short railing of the deck. But defendant's counsel did not recall what plaintiff's testimony was on this point, and the trial judge recalled that plaintiff testified she was the only one who went over to the short railing. The court ruled this testimony was cumulative, noting that, if defendant thought this was a significant point, the plaintiff was saddled more with her own admission than she would be if another witness testified to it. The trial court also found the evidence was not relevant and had no probative value as to the issue of liability.

On appeal, defendant relies on a portion of Jerry Prochnow's discovery deposition attached to the post-trial motion. Jerry Prochnow, in his discovery deposition, testified that the deck was 12 feet wide and 30 feet long. The group was standing at the long rail and plaintiff went over to the short rail. The rest of the group, according to Jerry Prochnow, remained at the long rail.

■ Whether all four members of plaintiff's party went to the north railing of the deck or only the plaintiff went there is not significant. Jerry Prochnow's testimony, as shown by his deposition, was not so unfavorable to plaintiff to require the trial court to give this instruction. The refusal to give the instruction was not an abuse of discretion.

The seventh issue is whether the trial court erred in refusing to allow defendant to attempt to impeach plaintiff with contradictory testimony given in her discovery deposition.

"A discovery deposition may be used for impeachment when it contains statements inconsistent with a witness' testimony. Answers to interrogatories may be used for the same purpose. *People ex rel. Mullin v*[.] *Williams* (1957)[,] 13 Ill[.] App[.] 2d 164, 141 N[.]E[.]2d 645. But only those portions that actually impeach may be used. *Bessette v*[.] *Loevy* (1956)[,] 11 Ill[.] App[.] 2d 482, 138 N[.]E[.]2d 56." R. Hunter, Trial Handbook for Illinois Lawyers §41.3, at 567 (5th ed. 1983).

■ The discovery deposition testimony does not impeach plaintiff. On direct examination, she testified to a numbness and tingling sensation that went up to the top of her head, which she noticed when she brushed her hair. Defendant then tried to impeach her by using her testimony from a deposition taken a month before trial. In the deposition, although plaintiff testified that the scar was sensitive and she experienced puffiness in the area of the eye in the morning, defendant's counsel asked plaintiff in the deposition, "As you are sitting there now," whether the scar caused pain or any particular problem. Plaintiff answered, "No." Plaintiff was not brushing her hair and this does not eliminate the possibility that she might experience a numbing or tingling sensation on other occasions. Defendant's counsel then asked, "Is there anything else that you have left over from the accident, any other problem?" Plaintiff then went on to explain about the puffiness. Defendant's counsel did not then ask any other questions to pin her down as to whether these were the only two residual problems she had. In the discussion with the trial judge, defendant's counsel acknowledged that plaintiff said in an earlier deposition that she experienced a tingling sensation, but in this more recent deposition defendant's attorney failed to ask questions which would rule out the possibility plaintiff was still experiencing the same sensation.

In controlling cross-examination, the trial court has broad discretion, and the judgment will be reversed because of the trial court's limiting of cross-examination only where a clear abuse of discretion has been demonstrated and the abuse of discretion materially affected the outcome of the trial. (*Elliott v. Koch* (1990), 200 Ill. App. 3d 1, 18, 558 N.E.2d 493, 506.) "The test for determining whether a prior statement is sufficiently inconsistent to be used for impeachment purposes is whether the inconsistency is great enough to contravene the witness' direct testimony on a material matter." (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 39, 458 N.E.2d 1331, 1340.) An abuse of discretion has not been demonstrated in this case as the deposition testimony does not contradict the plaintiff's in-court testimony.

The eighth and final issue is whether the trial court erred by admitting into evidence photographs of the siding of defendant's clubhouse. Photographs are demonstrative evidence. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§401.2, 401.8 (5th ed. 1990).

"Courts have long favored the use of demonstrative evidence to help the jury to better understand the issues in a case. (*Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311.) The overriding considerations in admitting demonstrative evidence are relevancy and fairness. (*Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, 406 N.E.2d 611, *aff'd* (1982), 92 Ill. 2d 72, 440 N.E.2d 848.) The admissibility of demonstrative evidence is a matter within the trial judge's discretion and his ruling will not be disturbed absent a clear showing that he abused that discretion. *Becker v. Aquaslide 'N' Dive Corp.* (1975), 35 Ill. App. 3d 479, 341 N.E.2d 369." (*Ogg*, 121 Ill. App. 3d at 38, 458 N.E.2d at 1339-40.)

In order to demonstrate the relevance and fairness of a photographic exhibit, a special foundation must first be laid.

"Admission of a photograph into evidence requires the testimony of a witness, who has personal knowledge of the photographed object at a time relevant to the litigation, that the photograph being offered is a fair and accurate representation of the object at the relevant time. (*Gaunt & Haynes, Inc. v. Moritz Corp.* (1985), 138 Ill. App. 3d 356, 364, 485 N.E.2d 1123, 1129.)" *Maroldy v. Isaacson* (1989), 189 Ill. App. 3d 785, 787, 545 N.E.2d 736, 737.

In this case, defendant complains that plaintiff's exhibit Nos. 3A and 3D, photographs of the clubhouse showing dent marks in the siding, were not properly admitted. Plaintiff's husband testified that, although he did not take the photographs, he was familiar with the north side of defendant's clubhouse, had gone and looked at the clubhouse two weeks after the incident, and that the photographs fairly and accurately depicted the condition of the siding on the north side of the clubhouse in that he recalled specific marks being there.

Defendant argues that it is obvious from this testimony that the photographs do not depict the siding at the time of the incident in which plaintiff was injured. In essence, defendant is arguing that the photographs do not depict the condition of the building at a time relevant to the litigation. In order to be relevant, evidence must tend to make more or less probable the existence of a fact which is of consequence to the determination of the action. (*Baird v. Adeli* (1991), 214

Ill. App. 3d 47, 68, 573 N.E.2d 279, 292.) Naturally, if the photograph is introduced to demonstrate the conditions at the time of the incident, the length of time between the incident and the taking of the photograph may have some effect on the relevance of the exhibit.

> "Changed conditions alone do not render the photograph inadmissible if, after the changes are explained, the trier of fact can understand the correct representation and will not be misled by the photograph." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.8, at 142 (5th ed. 1990), citing *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 105, 378 N.E.2d 502, 504.

There is nothing in the record which refutes the testimony of plaintiff's husband that the photographs accurately and fairly depicted the condition of the siding on the north side of the defendant's clubhouse when he viewed it two weeks after the incident. The photographs need not have been taken at the instant the golf ball impacted plaintiff's head. An abuse of discretion has not been demonstrated.

For the foregoing reasons, the judgment of the circuit court of Woodward County is affirmed.

Affirmed.

STEIGMANN, P.J., and COOK, J., concur.