Rule 23 order filed
February 15, 2008;
Motion to publish granted
March 24, 2008.

NO. 5-07-0002

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| ALBERT TRTANJ and MARY TRTANJ, for the Use of STATE FARM FIRE AND CASUALTY COMPANY, | ) Appeal from the<br>) Circuit Court of<br>) Madison County.<br>) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) No. 02-L-958 |
| | ) |
| THE CITY OF GRANITE CITY, | ) Honorable<br>) Daniel J. Stack, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

The plaintiffs appeal an order of the circuit court of Madison County granting a summary judgment in favor of the defendant, the City of Granite City (Granite City). We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

Plaintiffs Albert and Mary Trtanj (the Trtanjs) own a residence on Oaklawn Drive in Granite City, Illinois. This action was brought by plaintiff State Farm Fire and Casualty Company (State Farm) against Granite City on behalf of the Trtanjs to recover damages to the Trtanjs' residence and personal property as a result of sewage backing up into their basement on July 22, 2001. State Farm paid a portion of the damages suffered by the Trtanjs and brought this lawsuit pursuant to State Farm's right of subrogation under an insurance policy issued to the Trtanjs.

The record establishes that Granite City's sewage system is a gravity-fed sewer system in which the sewage flows by gravity through sewer pipes to a certain depth and, at that

1

point, lift stations lift the sewage to a new height so that the gravitational flow continues through the sewer pipes. The lift stations utilized by Granite City operate on electrical pumps. On the night of July 22, 2001, a rainstorm caused a power outage to three of Granite City's sewage lift stations, including the Terrace Lane lift station, which is located directly downstream from the Trtanjs' residence. Although the electricity flow to the lift station's pumps ceased during the power outage, sewage flow to the lift station continued. The sewage level at the Terrace Lane lift station rose to its maximum capacity, and sewage then began backing up along the sewer pipe system upstream from the lift station and eventually into the Trtanjs' basement.

The superintendent of streets for Granite City at the time of this incident, Gerald Lakin, testified about the procedures Granite City follows when there is a power outage to a sewage lift station. When there is a power outage to a lift station's electric pump, a battery-powered alarm notifies the Granite City police department, and the police department then notifies the city's street department of the power outage. Workers from the street department then retrieve, set up, and run a bypass pump at the lift station until electrical power is restored.

According to Lakin, when the power went out on July 22, 2001, they had to set up bypass pumps at three different lift stations, including the Terrace Lane lift station. The street department chose to set up the bypass pump at the Terrace Lane lift station last. They chose the order in which to set up the bypass pumps based on the volume of sewage that normally flowed into the respective stations. Lakin stated in his deposition that from the time everyone arrived at the street department's facility, it took approximately one hour to set up each bypass pump. Therefore, the Terrace Lane lift station pump was down more than two or three hours before its bypass pump was hooked up and running.

Lakin also stated that the city's storm water drainage system was a totally separate

2

system from the city's sewer system. However, according to Lakin, the main sewer pipe servicing the Trtanjs' home was made of clay, and the city had problems with outside water infiltrating this clay sewer pipe, especially during periods of heavy rain. Outside storm water infiltrating into the sewer main decreased the sewer main's capacity to handle sewage flow and lessened the time it took for sewage to back up into the Trtanjs' basement after the power outage. Lakin testified that the city was aware of outside water infiltration upstream from the Terrace Lane lift station but did not make any effort to reduce the amount of infiltration.

Granite City's superintendent of streets at the time of the hearing, Rick Fancher, testified that it should only take 15 minutes for the street crew to arrive at a lift station with a portable pump once the station's power outage alarm sounds and that it takes 15 minutes to hook up a portable bypass pump at the lift station once it arrives. Fancher testified that it should never take two or three hours for the street crew to get a portable pump to a lift station.

The plaintiffs filed their initial complaint against Granite City on July 5, 2002, and they filed an amended complaint on July 15, 2005. In count I of the amended complaint, the plaintiffs alleged that Granite City's negligence in its operation and maintenance of the city's sewer system proximately caused the damage to the Trtanjs' real and personal property. In count II of the amended complaint, they alleged a cause of action against Granite City for a temporary nuisance arising from the sewage backup, and in count III of the amended complaint, they alleged a cause of action against Granite City for a trespass.

On May 12, 2006, Granite City filed a motion for a summary judgment. In its motion for a summary judgment, Granite City argued that the plaintiffs' claims were barred under the statute of repose (735 ILCS 5/13-214 (West 2006)), that it was entitled to discretionary immunity under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 2006)), and that it was not liable for the plaintiffs'

3

damages because the sewer backup occurred during an extraordinary rainstorm. On November 29, 2006, the circuit court entered the following order granting Granite City's motion for a summary judgment:

"This matter comes for hearing on Defendant's *Motion for Summary Judgment* filed 12 May 2006. Arguments heard; counsel granted leave to file supporting documentation. Now after having had an opportunity to review the authority presented by both sides, the Court hereby grants Defendant's *Motion for Summary Judgment*." (Emphasis in original.)

The plaintiffs filed a timely notice of appeal on December 27, 2006.

### ANALYSIS

A summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006); *People ex rel. Department of Labor v. General Electric Co.*, 347 Ill. App. 3d 72, 78 (2004). Because a summary judgment is a drastic method of terminating litigation, the reviewing court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 681 (2003). A summary judgment must be granted with caution to avoid preempting a litigant's right to fully present the factual basis of his claim. *Lamkin v. Towner*, 246 Ill. App. 3d 201, 204 (1993). In ruling on a summary judgment motion, the circuit court must construe the pleadings, affidavits, depositions, and admissions on file strictly against the moving party and liberally in favor of the opponent, and the court should grant the motion only if these materials establish without doubt that the moving party is entitled to a summary judgment. *Lamkin*, 246 Ill. App. 3d at 204.

On an appeal from the grant of a summary judgment, the appellate court's review is

4

*de novo* and is limited to determining whether the trial court correctly found that no issue of material fact existed and, if none existed, whether the trial court correctly entered a judgment as a matter of law. *General Casualty Co. of Illinois v. Carroll Tiling Service, Inc.*, 342 Ill. App. 3d 883, 889 (2003). In the present case, we hold that there are material issues of fact which preclude the entry of a summary judgment in favor of Granite City on all theories of liability.

The plaintiffs allege in their amended complaint that sewage backed up into their basement because city workers did not respond to the power outage in a timely manner. Granite City's former superintendent of streets testified that it took them more than two or three hours to install the bypass pump at the Terrace Lane lift station, but Granite City's superintendent of streets at the time of the hearing testified that it should take no longer than 15 minutes to arrive at the station with the bypass pump and no longer than 15 minutes to install the bypass pump. He stated that it should never take more than two hours for a street crew to arrive at a lift station following a power outage. In addition, there is evidence that the clay pipe used as the sewer main servicing the Trtanjs' home allowed outside water to infiltrate the sewer main and that this infiltration diminished the sewer main's capacity to handle sewage flow. There is evidence that Granite City knew of the outside water infiltration and knew this infiltration diminished the capacity of the sewer system. We believe that these facts, construed strictly against Granite City and liberally in favor of the plaintiffs, establish material issues of fact that would preclude a summary judgment. Genuine issues of material fact exist concerning whether Granite City's acts or omissions in the operation and maintenance of its sewage system caused the damage to the Trtanjs' real and personal property.

In its motion for a summary judgment, Granite City argued three grounds for granting a judgment in its favor: (1) that the plaintiffs' action was barred by the 10-year statute of

5

repose (735 ILCS 5/13-214(b) (West 2006)), (2) that Granite City was entitled to discretionary immunity under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 2006)), and (3) that Granite City was entitled to a summary judgment because the rainstorm on the night of the incident was an "extraordinary" rainstorm. The circuit court granted Granite City's motion for a summary judgment but did not specify on what grounds it based its decision. We have considered all three grounds set out in Granite City's motion for a summary judgment and find that the trial court erred in its summary judgment ruling.

Statute of Repose

Section 13-214(b) of the Code of Civil Procedure, also known as the statute of repose, states in pertinent part:

> "No action based on tort, contract[,] or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13-214(b) (West 2006).

"[A] statute of repose differs from a statute of limitations in that a statute of limitations governs the time within which lawsuits may be commenced after a cause of action has accrued, while a statute of repose extinguishes the action itself after a fixed period of time, regardless of when the action accrued." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006).

To determine whether a party is protected by section 13-214(b), it is necessary to determine whether the party claiming protection under the statute engaged in activities that are enumerated in the statute. *Krueger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 303 (1996). It is not enough that the party seeking the protection of the statute is a landowner. *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill. App. 3d 387, 394 (1993). A

landowner is only protected by the statute if he or she engages in the enumerated activities. *Prochnow*, 253 Ill. App. 3d at 394. The plain language of the statute bars only those claims relating to specified activities related to the construction of an improvement to real property. *MBA Enterprises, Inc. v. Northern Illinois Gas Co.*, 307 Ill. App. 3d 285, 288 (1999).

In the present case, the plaintiffs' amended complaint contains certain allegations that fall within the purview of the design, installation, and construction of the sewer system and lift station. Paragraphs 12(e), 12(g), 12(h), 25(e), 25(g), and 25(h) of the amended complaint make allegations involving the construction, design, and installation of the sewer system or lift station. The record establishes that the sewer system and lift station were designed and constructed more than 10 years prior to the filing of the lawsuit. Therefore, we find that these allegations are barred under the 10-year statute of repose, and we affirm the trial court's award of a summary judgment with regard to the theories of liability contained in those paragraphs.

However, the remaining allegations are not based on the construction, installation, or design of Granite City's sewer system or the Terrace Lane lift station, and the trial court erred in granting a summary judgment with respect to those theories of liability under the statute of repose. These remaining claims allege acts or omissions by Granite City in its operation and maintenance of the sewer system and lift station *after* their construction. The express language of the statute of repose does not protect Granite City against the negligent maintenance or negligent operation of the sewer system or lift station after their construction. See *Gavin v. City of Chicago*, 238 Ill. App. 3d 518, 521 (1992) (in applying section 13-214(b) to the plaintiff's allegations, the court noted, "Plaintiff's allegations concern only the City's improper design of the traffic light fixture, not its failure to properly maintain the fixture"); see also *Bailey v. Allstate Development Corp.*, 316 Ill. App. 3d 949, 960-61 (2000) (maintenance or repair activity is not within the scope of construction-related activities

7

contemplated by the legislature in section 13-214).

We agree with *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill. App. 3d 387, 394 (1993) (quoting *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 135 Ill. App. 3d 765, 772 (1985), *rev'd on other grounds*, 114 Ill. 2d 252 (1986)), where the court stated as follows:

> " 'It is clear *** that the immunities granted by the present statute are limited to those persons who have engaged in the design, planning, supervision, observation or management of construction[,] or construction of the improvement[,] and all other persons, owners, tenants, persons in possession or control[,] and suppliers of material are still excluded from the benefits of the statute although they may be exposed to liability by reason of construction defects.' "

The statute of repose protects only those who engage in the enumerated activities protected by the statute: " 'design, planning, supervision, observation or management of construction, or construction.' " *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 263 (1986) (quoting Ill. Rev. Stat. 1983, ch. 110, par. 13-214(a)). The statute separates out construction activities from other activities, and only the enumerated construction activities fall within the statute's protection. *State Farm Mutual Automobile Insurance Co. v. W.R. Grace & Co.*, 834 F. Supp. 1052, 1058 (C.D. Ill. 1993), *aff'd*, 24 F.3d 955 (7th Cir. 1994).

With the exception of paragraphs 12(e), 12(g), 12(h), 25(e), 25(g), and 25(h) mentioned above, the plaintiffs' allegations of Granite City's acts or omissions in the amended complaint do not place Granite City as one engaged in the enumerated activities protected by the provisions of the statute of repose. See *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill. App. 3d 387, 394 (1993). Accordingly, Granite City is not entitled to summary judgment relief under the statute of repose with respect to those theories of liability.

8

Discretionary Immunity

"Unless an immunity provision applies, municipalities are liable in tort to the same extent as private parties." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 229 (2007). Granite City's motion for a summary judgment argued that Granite City was entitled to discretionary immunity pursuant to section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2-201 (West 2006)). The Act is strictly construed against the public entity seeking immunity. *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 56 (2003).

Sections 2-109 and 2-201 of the Act (745 ILCS 10/2-109, 2-201 (West 2006)) grant immunity to public entities for the performance of discretionary functions. Section 2-109 of the Act states:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2006).

Section 2-201 of the Act states:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2006).

In assessing discretionary immunity under section 2-201 of the Act, the supreme court has held, " 'A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan[,] it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner.' " *Greene v. City of Chicago*, 73 Ill. 2d 100, 108 (1978) (quoting *Johnston*

9

*v. City of East Moline*, 405 Ill. 460, 466 (1950)). In order to be entitled to immunity under section 2-201 of the Act, Granite City must show that its act or omission was both an exercise of discretion and a policy determination, as opposed to being ministerial. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 372 (2003).

The term "policy," when used in relation to the decisions of a public entity, has been defined as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 342 (1998) (quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Discretionary acts involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act or how and in what manner that act should be performed. *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394-95 (2000).

In contrast to discretionary acts, a local public entity is not immune from liability for the performance of ministerial tasks. *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 257 (2002). Ministerial acts "are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Wrobel*, 318 Ill. App. 3d at 396.

In *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995), the supreme court stated:

"[D]iscretionary acts are those which are *unique to a particular public office*, while ministerial acts are those which a person performs on a given state of facts in a *prescribed manner, in obedience to the mandate of legal authority*, and without reference to the official's discretion as to the propriety of the act." (Emphasis added.)

Accordingly, in the present case, in order to determine whether Granite City is entitled to immunity under section 2-201 of the Act, we must classify the alleged acts or omissions of Granite City as either discretionary or ministerial. "The classification of acts as either

10

discretionary or ministerial escape [*sic*] any precise formulation and must be made on a case-by-case basis in light of the particular facts and circumstances presented." *Wrobel*, 318 Ill. App. 3d at 396.  " ' "It would be difficult to conceive of any official act *** that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." ' "  *Snyder*, 167 Ill. 2d at 474 (quoting W. Prosser, Torts §132, at 988-90 (4th ed. 1971) (quoting *Ham v. County of Los Angeles*, 46 Cal. App. 148, 162, 189 P. 462, 468 (1920))).

Construing the Act strictly against Granite City, we find that Granite City is not entitled to a summary judgment under section 2-201 of the Act.  There are material issues of fact concerning whether Granite City timely hooked up a bypass pump to the Terrace Lane lift station and whether Granite City's acts or omissions in hooking up the bypass pump resulted in a backup of sewage into the Trtanjs' basement.  The acts or omissions that might have occurred during the process of hooking up the bypass pump were ministerial, not discretionary.

Once the alarm sounded to alert Granite City's street department of the power outage at the Terrace Lane lift station, Granite City's street workers had no discretion; they were required to follow the prescribed procedures for hooking up the bypass pump.  In other words, in hooking up the bypass pump, Granite City's employees were acting "on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act" (*Snyder*, 167 Ill. 2d at 474).

In addition, we find *Snyder v. Curran Township*, 167 Ill. 2d 466 (1995), instructive. In *Snyder*, the supreme court held that a township's duty to place a warning sign in conformity with the law was a ministerial duty.  *Snyder*, 167 Ill. 2d at 474.  The court noted that the placement of warning signs was subject to statutory and regulatory guidelines.

11

*Snyder*, 167 Ill. 2d at 474. The court stated, "[T]he duties of the defendant are more properly characterized as ministerial than discretionary, for the duties are performed under a given set of facts in a prescribed manner." *Snyder*, 167 Ill. 2d at 474.

Similar to *Snyder*, in the present case, a municipality's operation of a sewage system is subject to statutory and regulatory guidelines. The Illinois legislature has given authority to the Pollution Control Board, a division of the Illinois Environmental Protection Agency, to adopt regulations regarding the management of wastewater, and compliance is mandatory. 415 ILCS 5/12(a), 13(a)(3) (West 2006). The regulations of the Pollution Control Board at the time of the power outage stated, "Where part or all of the engine-driven pumping equipment is portable, sufficient storage capacity shall be provided to allow time for detection of pump station failure and transportation and hookup of the portable equipment." 35 Ill. Adm. Code §370.450(d)(2)(C), amended at 21 Ill. Reg. 12444 (eff. August 28, 1997). The Pollution Control Board's regulations also state, "Overflows from sanitary sewers are expressly prohibited." 35 Ill. Adm. Code §306.304 (1996). There is evidence that an overflow occurred in the present case in violation of these provisions.

Following the reasoning in *Snyder*, we find that the plaintiffs' allegations in the amended complaint involve ministerial acts and omissions. "Where, as in the instant case, tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary.' " *Snyder*, 167 Ill. 2d at 474.

Granite City had a duty not to discharge sewage from its sewer system onto private property. See *Porter v. Urbana-Champaign Sanitary District*, 237 Ill. App. 3d 296, 300 (1992). There is evidence in the record that sewage backed up into the Trtanjs' basement. There is evidence of record creating a factual issue related to Granite City's timeliness in hooking up the bypass pump after the power outage. There is evidence in the record that the

12

sewer main and lift station servicing the Trtanjs' home lacked sufficient capacity to allow for the hookup of a bypass pump because the sewer main allowed infiltration of outside storm water which decreased the main's capacity to handle sewage flow. There is evidence of record that Granite City had knowledge of the storm water infiltration. There are material issues of fact concerning whether Granite City complied with the Pollution Control Board's regulations described above. These issues are for the jury to decide. See *Snyder*, 167 Ill. 2d at 472 ("the issue of compliance or noncompliance with the Illinois Manual was a question properly before the jury"). Whether the damages suffered by the Trtanjs were proximately caused by Granite City's ministerial acts or omissions in the operation and maintenance of its sewer system should be decided by a fact finder, not a motion court.

Granite City argues that its failure to maintain property could be described as an exercise of discretion. We do not believe that the legislature intended such a result; otherwise, it would not have codified the common law duty to maintain property under section 3-102 of the Act and would not have codified the common law liability for the use of property that is not reasonably safe under section 3-103(a) of the Act. See *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768-69 (1996); 745 ILCS 10/3-102, 3-103(a) (West 2006); see also *Snyder*, 167 Ill. 2d at 475-76 ("Our conclusion that discretionary immunity does not insulate defendant from liability in the instant case is further buttressed by [section 3-103(a)] in the Immunity Act").

Once a municipality decides to perform a public work, the municipality must perform the public work with reasonable care and in a nonnegligent manner. *Snyder*, 167 Ill. 2d at 474-75; see also *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194 (1997) (" 'as soon as [a municipal corporation] begins to carry out [its sewer] plan, it acts ministerially[] and is bound to see that the work is done in a reasonably safe and skillful manner' " (quoting *City of Chicago v. Seben*, 165 Ill. 371, 378 (1897))). Construing the facts of record and the Act

13

strictly against Granite City, we find that Granite City is not entitled to discretionary immunity under section 2-201 of the Act for the acts and omissions alleged in the plaintiffs' amended complaint. To conclude, as Granite City argues, that its acts or omissions were discretionary would result in an impermissibly expansive definition of discretionary immunity.

Extraordinary Rainfall

Finally, Granite City argued in its motion for a summary judgment that it was not liable as a matter of law because the rainfall on the night of the sewage backup was extraordinary. However, we agree with the plaintiffs that the extent of the rainfall on the day of the sewage backup is not a fact of record properly before the court by way of a pleading, deposition, admission, or affidavit. See *Cato v. Thompson*, 83 Ill. App. 3d 321, 324 (1980). There are material issues of fact for the jury to resolve concerning the extent of the rainfall at the time of the incident, the extent that rainfall impacted the ability of Granite City's sewage system to handle sewage flow, and whether Granite City complied with sewage system regulations. Accordingly, a summary judgment was inappropriate under any theory based on the nature or amount of rainfall on the night of the sewage backup.

CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the order of the circuit court of Madison County granting Granite City's motion for a summary judgment, and we remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

CHAPMAN and DONOVAN, JJ., concur.

14

NO. 5-07-0002

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

ALBERT TRTANJ and MARY TRTANJ,     ) Appeal from the
for the Use of STATE FARM FIRE AND   ) Circuit Court of
CASUALTY COMPANY,                        ) Madison County.
                                                )
    Plaintiffs-Appellants,            )
                                                )
v.                                      ) No. 02-L-958
                                              )
THE CITY OF GRANITE CITY,       ) Honorable
                                              ) Daniel J. Stack,
    Defendant-Appellee.            ) Judge, presiding.

_____

**Rule 23 Order Filed:**      February 15, 2008
**Motion to Publish Granted:**  March 24, 2008
**Opinion Filed**:           March 24, 2008

_____

**Justices**:      Honorable Bruce D. Stewart, P.J.

               Honorable Melissa A. Chapman, J., and
               Honorable James K. Donovan, J.,
               Concur

_____

**Attorneys**    John P. Cunningham, Daniel G. Hasenstab, Brown & James, P.C., Richland Plaza
**for**         I, 525 West Main, Belleville, IL 62220-1547
**Appellants**

_____

**Attorneys**    Ronald A. Roth, Dawn Kamadulski O'Leary, Roth, Evans & Lading, P.C., 2421
**for**         Corporate Centre Drive, Suite 200, Granite City, IL 62040
**Appellee**

_____