2025 IL App (1st) 242300-U

FIFTH DIVISION
September 26, 2025

No. 1-24-2300

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| LOUIS GOUDANIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2023 L 3013 |
| | ) | |
| VILLAGE OF HILLSIDE, | ) | The Honorable |
| | ) | Stephanie D. Saltouros, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court properly granted summary judgment to defendant based on the Local Governmental and Governmental Employees Tort Immunity Act.

¶ 2                                I. BACKGROUND

¶ 3     On August 16, 2022, Louis Goudanis was walking home from a concert when he tripped and fell on an uneven sidewalk near the intersection of East End Avenue and Washington Street in Hillside, Illinois. He sustained injuries as a result.

¶ 4      On March 28, 2023, Goudanis filed a complaint against the Village of Hillside (Village), alleging that the Village had actual or constructive notice of the uneven sidewalk upon which he fell "a long time prior" to August 16, 2022, and yet permitted the dangerous condition to remain.

¶ 5      In its response, the Village admitted it was aware that the sidewalk at issue was raised or uneven, but denied that the condition of the sidewalk was unreasonably dangerous. It said that while temporary remedial measures could have been taken, "a conscious decision was made to take no action." It asserted three affirmative defenses, arguing (1) any sidewalk issue was *de minimis* and not actionable; (2) Goudanis was contributorily negligent; and (3) "[a]s a local public entity, [the Village] is entitled to avail itself of immunities afforded to it pursuant to the Local Governmental and Governmental Employees Tort Immunity Act." (Tort Immunity Act).

¶ 6      In his deposition, Goudanis testified that on August 16, 2022, he went to Hillside to see a band, and parked on East End Avenue, near the intersection of Washington Street. Around 9 pm, after the concert finished, he walked back to his car. He said he was "just looking straight ahead" and "wasn't really looking straight down at the sidewalk" as he walked. One of his toes got caught on uneven pavement and that caused him to fall. His head hit the concrete, and he ended up in the grass. Paramedics arrived 5-10 minutes later and took him to the hospital. His sister returned to the accident site a few days later and took photos of the raised/uneven sidewalk square. Goudanis said the sidewalk square was displaced "approximately two inches." Goudanis said he did not know how long the sidewalk had been in that condition, because he had never been to that area of Hillside before.

¶ 7      A Hillside police department incident report states that on August 16, 2022, around 9:18 pm, Officer Yohanne Nelson was dispatched to the intersection of East End Avenue and Washington Street to assist the fire department with a man who fell. Paramedics were assisting

Goudanis, who fell and was bleeding from the head. Goudanis was transported to Elmhurst Hospital by ambulance. When Officer Nelson spoke to Goudanis at the hospital, he said he tripped on the uneven pavement on the sidewalk and struck his head, causing a laceration over his right eye. Officer Nelson took photos of the sidewalk where Goudanis had fallen.

¶ 8 A verified statement by Robert McDonald was submitted by Goudanis. McDonald stated that he resided at 525 East End Avenue, which is located at the corner of East End Avenue and Washington Street. On September 28, 2021, he contacted the Village to inquire about its 50/50 sidewalk program and the possible replacement of the sidewalk squares on Washington Street at issue here. On or about September 30, 2021, he received the "sidewalk renewal – village of Hillside" form, which quoted $7350 for the replacement of 21 sidewalk squares on the sidewalks near his home with his share being $3675. McDonald did not sign or authorize the sidewalk replacement because the cost was too high. After he received the quote, he did not follow up with the Village. He did not witness Goudanis' accident and had no information about it.

¶ 9 During his deposition, McDonald testified that he contacted the Village in September 2021 "[b]ecause [he] didn't like how [the sidewalk in front of his house] looked and it wasn't really kind of, like, level. There was a lot of cracked concrete." He was unaware of anyone ever tripping or falling on the sidewalk near his home, however, and he had never had any issues walking there. Ultimately, he did not agree to participate in the Village's 50/50 program to replace the concrete sidewalk squares near his home because the cost the Village quoted him was too high. He did not have any further discussions with the Village about fixing the sidewalk, but eventually the Village replaced the sidewalk on its own at no cost to him.

¶ 10 In his deposition, Paul Smith testified that he was the director of public works for the Village and that he had held that position since May 2023. He had previously served as the assistant

director from 2003 until May of 2023. He explained that the Village does not have a formal inspection program to monitor the condition of the Village's sidewalks, and instead, relies on "observation or residential inquiry." He said the 50/50 Program is a residential participation program with the Village for sidewalk replacement. If a resident comes to the Village and wants his sidewalk replaced, Smith goes to "do an onsite assessment of what the current conditions are" and "make[s] a determination on what sidewalk squares potentially would be replaced." When Smith does these inspections, he is "looking for obvious conditions that would really warrant replacement, whether that is a crack or a depression." There is no document that the Village uses to determine whether a sidewalk needs replacing," and it is entirely up to Smith. He is the only one from the Village who conducts these inspections. The Village will then quote the resident a price for the repair. The Village will pay half the cost and the resident is expected to pay the other half. The Village gets about two dozen 50/50 requests a year, but only 25-30% of the homeowners choose to participate in the program. Smith testified that if he sees a condition on the sidewalk during one of these 50/50 inspections that is "obviously dangerous" and the resident declines to pay for their half, the Village still occasionally decides to do repairs on its own. He testified that he remembered the Village doing so maybe "four or five times."

¶ 11    After the Village got a service request from McDonald on September 28, 2021, to replace the sidewalk near his home, Smith went to inspect it. On September 30, 2021, Smith documented the 21 sidewalk squares he believed he needed replacement. The Village did not replace with sidewalk squares, however, because the homeowner elected not to participate in the 50/50 program. When Smith was asked if there were other reasons the Village chose not to replace the sidewalk squares near McDonald's home, he said, "I guess I also didn't necessarily feel that any additional action was required" because "I didn't find it to be overly hazardous." He testified that

4

the annual budget for all operations of the Village's public works department is about two million dollars.

¶ 12    After Goudanis's accident in August of 2022, Smith "[o]bserved the condition of the area" and took photos "[b]ecause it was a trip and fall" and there was the possibility of a lawsuit. He measured the "only vertical displacement that [he] saw on that stretch of sidewalk on Washington Avenue, where Mr. Goudanis allegedly fell" and said it "was about 1 inch and 7/8". When asked if the condition was a tripping hazard" he said it "could be, yes" but "f[ou]nd it to be far less of a hazard, than if it was located somewhere else, based on where it is adjacent to the fence." He admitted that the sidewalk squares near the accident site were eventually replaced by the city in the fall of 2022 "[b]ecause there was an accident there **** We replace[d] the stretch of squares that were allegedly the cause." The Village contains approximately 33 miles of sidewalk. It does not handle concrete repairs itself and instead contracts with third parties for its concrete work.

¶ 13    The Village moved for summary judgment, claiming it was entitled to discretionary immunity under the Tort Immunity Act because "Smith engaged in the determination of policy and exercise of discretion when he inspected and documented the sidewalk condition in September 2021 but decided to take no further action due to policy considerations and because, in his opinion, the only vertical displacement observed [in front of McDonald's home] was not significant enough to warrant further action." In response, Goudanis argued that the court should deny the Village's motion for summary judgment because it "failed to prove that Smith made a conscious decision not to repair the sidewalk; he just left that decision up to the homeowner." Goudanis also argued there was "no evidence that Smith balanced competing interests or made a judgment call as to what solutions w[ould] best serve those interests," and that Smith's actions were merely ministerial as he was just carrying out the 50/50 policy.

¶ 14    In its reply in support of its motion for summary judgment, the Village pointed out that "Smith determined that none of the defects that *he personally observed and documented* warranted immediate or future repair at the Village's expense" and that "[t]hat decision, which rests entirely with Smith, is a textbook example of a discretionary decision that he made in his official capacity as the Director of Public Works." (Emphasis in original.) The Village also argued that because Smith "did not believe that any of the sidewalk conditions that he observed were 'overly hazardous' " he made a discretionary decision not to repair the sidewalk in front of McDonald's house. The Village argued that "[t]he document reflecting Smith's September 30, 2021 inspection coupled with his unrebutted deposition testimony regarding his decision to take no action following that inspection" triggers its immunity from liability under section 2-201 of the Tort Immunity Act.

¶ 15    In its memorandum opinion and order, the court granted summary judgment to the Village. It noted that Smith "decided to take no further action in this case since he considered the condition [of the sidewalk near McDonald's home] not to be overly hazardous." The court found this testimony "sufficient to show that the decisions made by Smith with respect to the sidewalk repair and replacement at the location at issue were discretionary, and therefore, section 2-201 of the Tort Immunity Act applies." It noted that Goudanis offered no testimony to the contrary. Moreover, it found that the evidence that Smith decided to unilaterally repair some sidewalks even when homeowners decided not to participate "clearly shows that Smith's engagement with the 50/50 program was not ministerial."

¶ 16                                II. ANALYSIS

¶ 17    On appeal, Goudanis argues that the trial court erred when it granted summary judgment to the Village under the Tort Immunity Act because (1) Smith never made any discretionary

decisions not to repair the sidewalk; (2) no evidence was presented to show that Smith balanced competing interests or exercised independent discretion when he decided not to repair the sidewalk at issue; and (3) Smith was engaged in a ministerial act.

¶ 18                                A. Standard of Review

¶ 19    We review a trial court's grant of summary judgment *de novo*. *Givens v. City of Chicago*, 2023 IL 127837, ¶ 46. Summary judgment is a "drastic means of disposing of litigation" and should be granted only when the pleadings, depositions, admissions, and affidavits, when construed strictly against the movant and liberally in favor of the opponent, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986); 735 ILCS 5/2-1005(c) (West 2024). "[T]o survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia,* 2014 IL 116998, ¶ 12.

¶ 20                                B. The Tort Immunity Act

¶ 21    Section 2-201 of the Tort Immunity Act states that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2024). The purpose of the Act is to "protect[] local public entities and public employees from liability arising from the operations of government" (*Williams v. Miracle Center, Inc.,* 2022 IL App (1st) 210291, ¶ 30), and is "premised upon the idea that such officials should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability." *Harrison v. Hardin County Community Unit School District No. 1,* 197 Ill. 2d 466, 472 (2001). By providing

governmental immunity, the General Assembly "sought to prevent the dissipation of public funds on damage awards in tort cases." *Van Meter v. Darien Park District,* 207 Ill. 2d 359, 368 (2003). The burden is on the public entity to prove its immunity under the Act, which "must be strictly construed against the public entity seeking immunity." *Williams v. Miracle Center, Inc.,* 2022 IL App (1st) 210291, ¶ 30.

¶ 22　For immunity to attach under section 2-201, a public entity must prove that its employee held either a position involving the determination of policy or the exercise of discretion, and that "the act or omission giving rise to the injury *** result[s] from both a determination of policy and an exercise of discretion." *Strauss v. City of Chicago,* 2022 IL 127149, ¶ 60. An employee exercises his discretion "when he is not legally mandated to choose one thing over another and there is no predetermined roadmap for his decision." *Id.* ¶ 61. The "policy determination" requirement has been defined as "a decision that requires the public entity to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Richter v. College of DuPage,* 2013 IL App (2d) 130095, ¶ 40.

¶ 23　　　　　　　　　　A. Discretionary Decision

¶ 24　Goudanis does not dispute that Smith held either a position involving the determination of policy or the exercise of discretion, but argues that a genuine issue of material fact remains as to whether Smith "made a conscious decision not to repair the sidewalk." He argues that Smith "made no discretionary decision regarding the condition of the [sidewalk at issue]" and instead, "not making the repair was simply the default result of McDonald not agreeing to pay 50% of the repair cost."

¶ 25　In response, the Village argues that Smith's deposition testimony reflects that he made a discretionary decision not to repair the sidewalk in front of McDonald's house because he observed

the condition of the sidewalk but decided to take no further action because he "didn't find [the sidewalk] to be overly hazardous." Goudanis argues that Smith's testimony about the reasons behind his decision not to repair the sidewalk was "equivocal" at best. However, we agree with the circuit court that Smith's observations regarding the condition of the sidewalk in front of McDonald's home, coupled with his testimony that, under his direction, the Village decided to unilaterally repair "obviously dangerous" sidewalks in front of homeowner's homes when homeowners decided not to participate in the 50/50 program on at least four or five occasions, demonstrates that Smith's decision not to repair the sidewalk in front of McDonald's home was a discretionary one.

¶ 26                              B. Personal Deliberation or Judgment

¶ 27    Next, Goudanis argues that there was no evidence that Smith "exercised any personal deliberation or judgment with regard to the condition of the occurrence sidewalk." Goudanis relies on *Monson, Williams,* and *Andrews* for support, but all three cases are distinguishable because, in each, the public entity was either unaware of the dangerous condition or failed to submit any evidence to establish its awareness.

¶ 28    In *Monson v. City of Danville*, 2018 IL 122486, ¶ 3, the plaintiff fell after she tripped on an uneven seam in a sidewalk in downtown Danville. The city moved for summary judgment, arguing that it was immune from liability under the Tort Immunity Act because its employees exercised discretion in determining which portions of the downtown sidewalks were in need of repair or replacement. *Id*. ¶ 8. The director of the city's public works department testified that the department completed a project before the plaintiff's accident, where it identified all areas of concern with the city's downtown sidewalks, and made final decisions about which sections of the sidewalk would be repaired or replaced. *Id.* ¶ 4. While the director testified that the sidewalk

9

squares at issue fell within the parameters of the project and said he "believe[d] [they] did consider the slab[s] of concrete [at issue] because we looked at every slab of concrete," he admitted that "he could not recall inspecting or measuring the particular slabs of concrete where plaintiff fell," or "recall making a decision not to repair those specific slabs." *Id*. ¶ 5. The director had no emails or documents in his possession related to those specific slabs. *Id*. ¶ 34. Based on the record, our supreme court found that the city was not entitled to immunity because it "has not presented any evidence documenting the decision not to repair the particular section of sidewalk at issue in this case." *Id*. ¶ 35. It reasoned that without evidence that the city was aware of the defect and "made a conscious decision not to perform the repair," the city was not entitled to immunity. *Id*. ¶¶ 33-34.

¶ 29    In *Williams v. Village of Berkeley,* 2024 IL App (1st) 231481, ¶ 4, a man was injured and his dog was killed after a branch from a rotten tree fell on them. The Village moved for summary judgment, claiming it was immune from liability under the Tort Immunity Act. *Id*. ¶ 15. The superintendent of the Village's public works department testified that he had sole discretion to decide when trees needed to be removed and said he inspected the tree at issue prior to the accident, but saw no need to remove it. *Id*. ¶ 11. According to his testimony, he was "not aware of the rot that allegedly caused the limb to break and fall" and "believed the tree to be healthy." *Id*. ¶ 38. This court found that the Village was not entitled to immunity, stating that "it cannot be said that [the superintendent] made a conscious decision to not address the defect in the subject tree when, despite having inspected the tree, he was not aware of the injury-causing condition." *Id*. The court noted that "[i]f [the superintendent] had observed signs of rot and chosen not to address it for policy-related reasons, whether that be allocation of funds *** etc., then that would have been a conscious decision and an exercise of discretion." *Id*. ¶ 39. It found "[t]here must be an awareness

of the defect and a conscious decision not to address it for policy-related reasons before there can be a finding that discretion was exercised." *Id.*

¶ 30    In *Andrews v. Metropolitan Water Reclamation District of Greater Chicago,* 2019 IL 124283, ¶ 6, a contractor's employee was seriously injured after he fell when using a two-ladder configuration to repair an effluent chamber. After the employee's wife filed suit against the water reclamation district, the district moved for summary judgment, claiming it was immune from liability under the Tort Immunity Act. *Id.* ¶ 11. Our supreme court found that the district was not entitled to immunity because it presented no evidence to show that its employees made discretionary or policy decisions with respect to the two-ladder configuration. *Id.* ¶ 35. It noted that the district's senior engineer admitted that he did not know when the two ladders were placed, "never inspected the ladders involved" and never "assessed whether they complied with any codes, rules, or regulations." *Id.* It reasoned that because the engineer was unaware of the condition, he could not have made a "conscious decision with respect to the condition involved in the accident." *Id.*

¶ 31    Here, by contrast, the record establishes that the Village was aware of the condition of the sidewalk in front of McDonald's residence before Goudanis's fall. Smith testified that on September 30, 2021, he inspected the sidewalks in front of McDonald's home, and that he documented 21 sidewalk squares he believed needed replacement. Smith's findings are captured in the 50/50 report he prepared and delivered to McDonald. In addition, Smith testified that after McDonald chose not to replace the sidewalk squares under the 50/50 program, Smith took no further action to repair the sidewalk because he "didn't find [it] to be overly hazardous." Thus, unlike *Andrews*, *Monson*, and *Williams,* the record here demonstrates that the Smith was aware of

the condition of the sidewalk in front of McDonald's home and made a conscious decision not to repair it.

¶ 32                              C. Balancing Competing Interests

¶ 33    Next, Goudanis argues there is no evidence that Smith "balanced any competing interests" before electing not to repair the sidewalk in front of McDonald's home. He argues that the "type [of] decisions that are immunized by the Tort Immunity Act" are those involving "complex decisions regarding competing interests" and that here, "evidence of a deliberative process is completely lacking[.]"

¶ 34    Goudanis relies on *Richter v. College of DuPage,* 2013 IL App (2d) 130095, ¶ 4, for support, where a woman sued the college after she fell on an uneven sidewalk. She alleged that the college had actual notice of the uneven sidewalk and negligently failed to repair it. *Id.* The college claimed it was entitled to immunity under the Tort Immunity Act. *Id.* ¶ 6. The supervisor of the buildings-and-grounds department testified that he had "unfettered discretion" to decide whether to fix "abnormally dangerous" sidewalks in the winter or to wait until the winter's freeze/thaw cycle was over. *Id.* ¶ 19. The court found that summary judgment was warranted, reasoning that the supervisor "made a judgment call as to the handling of each sidewalk deviation, including the one at issue here" by placing cones and applying yellow paint at the site of the deviation, but deciding to wait to repair the sidewalk until later on. *Id.* ¶ 41.

¶ 35    While we acknowledge that evidence of the deliberative process employed by the supervisor in *Richter* is more extensive than the evidence of Smith's deliberative process here, we find the evidence is sufficient to demonstrate that Smith deliberated before deciding not to repair the sidewalk in front of McDonald's home. Smith testified that the public works department was responsible for maintenance of about 33 miles of sidewalks, the Village's annual budget was about

$2 million dollars, and that the Village had unilaterally repaired its sidewalks on at least four or five occasions even after homeowners elected not to participate in the 50/50 program when conditions were "obviously dangerous." In addition, he testified that he "didn't feel that any additional action was required" regarding the sidewalks in front of McDonald's home after McDonald elected not to participate in the 50/50 program, because he "didn't find [the sidewalk] to be overly hazardous."

¶ 36                           D. Ministerial v. Discretionary

¶ 37    Finally, Goudanis asserts that Smith was merely engaged in "the ministerial act of carrying out the 50/50 sidewalk program" relating to the sidewalk in front of McDonald's home and therefore is not entitled to immunity for his conduct.

¶ 38    Case law distinguishes between "discretionary" acts, those that are "unique to a particular public office," and "ministerial" ones, those that a person "performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township,* 167 Ill. 2d 466, 474 (1995). "Determining whether an act or omission is discretionary should be made on a case-by-case basis depending on the particular facts and circumstances." *Andrews*, 2019 IL 124283, ¶ 28.

¶ 39    Goudanis relies on *Robinson v. Washington Township,* 2012 IL App (3d) 110177,  for support, where the plaintiff sued the township after his car hit a pothole. *Id.* ¶ 1. The township moved to dismiss under the Tort Immunity Act, arguing that it was immune from liability because filling potholes was a discretionary function; the trial court agreed and dismissed plaintiff's case. *Id.* ¶ 5. On appeal, a division of this court noted that "whether a municipality engages in a plan to improve a roadway is a discretionary matter, but once the decision to perform work is made, it

13

must be done with reasonable care." *Id.* ¶ 14. It found that because plaintiff's complaint alleged that the township "failed to provide a road free of hazards and to maintain the road in a reasonably safe condition" after the township began repairing the roadway, the township's act of filing potholes was merely ministerial. *Id.* ¶ 12. Therefore, it determined that the township was not immune from liability under the Tort Immunity Act and reversed the trial court's decision to dismiss plaintiff's case. *Id.* ¶¶ 18, 20.

¶ 40 Here, however, Goudanis does not allege that the Village began repairing the sidewalk in front of McDonald's home and did so in a negligent manner. Instead, he challenges the Village's decision to take no action to repair the sidewalk at all. Accordingly, this case is more analogous to *Richter,* 2013 IL App (2d) 130095, ¶ 44, where the court found that a superintendent's decision not to repair the sidewalk squares at issue was discretionary, not ministerial, because the superintendent "testified that he alone made the final determination regarding the handling of each sidewalk deviation; he had unfettered discretion. [He] possessed the unique role of assessing each sidewalk situation individually before determining how best to proceed, and there was no set of rules or regulations that he was bound to follow." He said he "had the discretion to do nothing at all" or "had the discretion to make a repair during the freeze-and-thaw season if the deviation was abnormally dangerous." *Id.*

¶ 41 Similarly here, Smith testified that when a homeowner approaches the Village about a sidewalk issue, "[t]here is no document that the Village uses to determine whether a sidewalk needs replacing." He testified that he is the only one from the Village who conducts sidewalk inspections, and that it is completely up to him to decide whether the sidewalk warrants repair or replacement. Even if a homeowner decides not to participate in the 50/50 program, if Smith sees a condition on the sidewalk during one of his inspections that is "obviously dangerous", the Village

has unilaterally done repairs. Based on Smith's testimony, we find that his actions here were discretionary, not ministerial. *Cf. Trtanj v. City of Granite City,* 379 Ill. App. 3d 795, 804 (2008) (finding that the city's acts or omissions related to activating a bypass pump were ministerial instead of discretionary, reasoning that once the city's power outage alarm sounded, city workers "were required to follow the prescribed procedures for hooking up the bypass pump"); *Gutstein v. City of Evanston,* 402 Ill. App. 3d 610, 628 (2010) (finding that the city was not entitled to immunity after a homeowner was injured when carrying her yard waste to the alley, reasoning that once the alderman put plaintiff's alley on the priority list for repairs, the city's public works supervisor "no longer had discretion to decide whether or not to allocate City resources for the repair of plaintiff's alley. That decision had been taken out of his hands. All that was left for [the supervisor] was to carry out the requested maintenance, an act that we have previously found to be ministerial."); *Snyder,* 167 Ill. 2d at 474 (finding that the township's act of placing a warning traffic device on the left side of the road was ministerial, not discretionary because "tailored statutory and regulatory guidelines place certain constraints on the decisions of officials[,]" including mandating where warning devices must be placed).

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we find that the trial court properly granted summary judgment to the Village based on the Tort Immunity Act. The judgment of the trial court is affirmed.

¶ 44    Affirmed.