2020 IL App (2d) 191124-U
No. 2-19-1124
Order filed October 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SUSAN BRICHETTO, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-3 |
| | ) | |
| PLAINFIELD COMMUNITY | ) | |
| CONSOLIDATED SCHOOL | ) | |
| DISTRICT #202, | ) | Honorable |
| | ) | Stephen L. Krentz, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in granting summary judgment on the plaintiff's complaint where the claims based on negligence were immunized under section 3-106 of the Tort Immunity Act and the evidence was insufficient to establish willful and wanton conduct as a matter of law.

¶ 2   This case arises from injuries the plaintiff, Susan Brichetto, suffered as a result of tripping over a pole vault pole on the ground in the field house of the defendant, Plainfield Community Consolidated School District #202. Following her injury, the plaintiff filed an amended two-count complaint against the defendant, alleging a claim for negligence and a claim for willful and wanton

conduct. The defendant filed a motion for summary judgment, arguing that it was immune from liability for the negligence claim and asserting that its alleged misconduct did not rise to the level of willful and wanton conduct. Following a hearing, the trial court granted the defendant's motion. The plaintiff appeals from this order. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4      On February 27, 2016, the defendant hosted a track meet at Plainfield South High School (Plainfield). The event was held at the field house. A number of schools participated, including Oswego East High School (Oswego). The 76-year-old plaintiff attended the track meet to watch her granddaughter, Rebecca Staples, compete. Staples was a member of Oswego's track team. When the plaintiff arrived shortly before 9 a.m., she texted Staples to let her know she had arrived. Staples met the plaintiff at the entrance of the field house. As she walked with Staples, the plaintiff had one arm linked with her granddaughter and held a coffee cup in her other hand. While walking with Staples arm-in-arm, the plaintiff tripped and fell over a pole vault pole laying in the field house pedestrian walkway. The plaintiff was taken to a medical center and learned that she had suffered a compound fracture of her femur above her right knee.

¶ 5      On October 23, 2017, the plaintiff filed an amended two-count complaint against the defendant. Count 1, based on negligence, alleged that the defendant had a duty to maintain pedestrian walkways so as to not negligently cause injuries. The plaintiff asserted that the defendant negligently permitted a pole vault pole to obstruct the pedestrian walkway, failed to warn of the dangerous condition, failed to provide a barrier between the pole vault area and the walkway, failed to monitor the walkway and the use of equipment, failed to provide security personnel to prevent dangerous conditions, and failed to design a safe entrance and exit for spectators. The plaintiff alleged that the defendant's negligence was the proximate cause of her

injuries. Count II asserted a claim based on willful and wanton conduct, asserting that the defendant's alleged misconduct was also willful and wanton.

¶ 6    On August 28, 2019, the defendant filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2018)). The defendant argued that it was subject to immunity under section 3-106 of the Tort Immunity Act (Immunity Act) (745 ILCS 10/3-106 (West 2018)), which provided immunity to a local public entity where liability was based on the existence of a condition on property used for recreational purposes. The defendant also argued that it was subject to immunity under section 3-108(a) of the Immunity Act (*id.* § 3-108(a)), which provided immunity to a local public entity for acts of negligent supervision. Finally, the defendant argued that there was no evidence of willful and wanton conduct because there were no facts to support that it knew of a dangerous condition or any previous injuries resulting from its design or layout of the event.

¶ 7    The defendant submitted multiple depositions in support of its motion for summary judgment. In his deposition, Kenneth Bublitz attested that he was the defendant's athletic director at Plainfield. Prior to February 2016, he had been in charge of preparing for track meets at the high school. This involved moving bleachers, taping off areas, and setting up the timing tower, the high jump pits, the pole vault area, and the shot-put area. The set-up of the events in the field house had been the same for many years. The preparation was done the night before.

¶ 8    Bublitz further stated that track meets were supervised by the athletic director or assistant athletic director, the coaching staff, and any other person involved with timing or spotting. All the defendant's personnel that were present had the responsibility to maintain safety during an event. Additionally, each team participating in a track meet provided one person to be responsible for overseeing a specific event, such that one school oversaw hurdles, one school oversaw pole vault,

one school oversaw running, etc. Bublitz acknowledged that on February 27, 2016, there was a pole vault pole stand and that any pole not being used should have been placed on the stand. He was at the track meet when the plaintiff was injured and learned of it over his radio. He did not see the fall, did not know who left the pole in the walkway and did not know who moved it after the plaintiff's fall.

¶ 9    In his deposition, Ryan Flanagan stated that he had been employed by the defendant since 2005. In 2016, he was a teacher and the assistant athletic director at Plainfield. As the assistant athletic director, he was responsible to make sure the track meets were safe for participants and spectators. As the host of the event, the high school staff decided where the events would be set up in the field house, where the bleachers would be placed, and the general traffic flow of pedestrians in the field house. He agreed that it was not safe for someone to place a pole vault pole in the pedestrian walkway.

¶ 10    Flanagan arrived early for the February 27, 2016, track meet. There were also present about four track coaches, the athletic trainer, admissions personnel, timers, janitorial staff, and Bublitz. Flanagan did not see the plaintiff fall down but was informed by someone of the incident. He completed an incident report at 9 a.m. on that day. The report stated that the fall was witnessed by an Oswego coach, Conner Downs. Flanagan stated that the plaintiff fell in the area between the entrance to the field house and the bleachers. She was within the pedestrian walkway. He did not know who placed the pole vault pole in the walkway. Flanagan stated that he was aware that there were video cameras throughout the school. He was not sure who maintained the video system. He knew that video footage was stored for a certain amount of time and then deleted. He watched the video of the plaintiff's fall at some point. He stated that, prior to the plaintiff's fall, he was not aware of any unsafe condition.

¶ 11    In her deposition, Janeen Carlberg stated that she was employed by the defendant at Plainfield as a gym teacher and the head track and field coach.  As one of the defendant's employees, she had the responsibility to make sure that the site of the track events was safe. Carlberg identified a schematic of the how the field house should be set up for track and field events.  She did not know who created the schematic, but it had been followed since she became head track and field coach in 2009.  There was yellow caution tape set up to prevent spectators from stepping onto the track when competitors were running.  There was also caution tape set up around the pole vault and pit area.  She, the other coaches, and the student athletes set up for the February 27, 2016, track invitational on the night before the event.  After the set-up, and after the student athletes left, she and the other coaches walked through the field house to make sure everything was set up properly and that there were no unsafe conditions.  They also did a walk through on the morning before the invitational started.  They did not notice anything unsafe.

¶ 12    On February 27, 2016, she was not in the field house when the plaintiff fell.  She did not learn about it until after the plaintiff was taken away by the paramedics.  She stated that she had recently watched the video that showed the plaintiff after her fall.  The video did not show the plaintiff actually falling.  A pole vault pole was in the pedestrian walkway and was not where it was supposed to be.  There were stands in the pole vault area where the poles were to be placed when not being used.  She did not know who left the pole in the pedestrian walkway or who the pole belonged to.  However, she did not believe it was the defendant's pole because the video showed that all the defendant's pole vaulters were standing with their poles in their hands.

¶ 13    Connor Downs stated that he had been employed by Oswego since 2014 as a teacher and coach.  He was at the defendant's track invitational on February 27, 2016.  He had been there for indoor track meets about 24 times.  He did not notice anything unusual about the set up or any

unsafe conditions on the day of the plaintiff's fall. He acknowledged that all coaches from all teams had the responsibility to maintain safe conditions and that each school was responsible for keeping track of its own equipment.

¶ 14 On February 27, 2016, he saw the plaintiff meet with Staples at the entrance of the field house. The plaintiff was holding a cup of coffee with one hand and Staples arm with the other. The two started walking toward the bleachers. He observed them for about 30 to 40 seconds, and then saw the plaintiff fall. The fall occurred about 8:40 a.m. The plaintiff's left foot got caught on a pole vault pole, which set her off balance. Staples did not fall. After he saw the plaintiff fall, he went to see if she was okay. Someone else called the paramedics. Other people started clearing out the area, moving bleachers and the pole vault poles out of the way. He did not know who moved things.

¶ 15 On October 4, 2019, the plaintiff filed a response to the motion for summary judgment. The plaintiff argued that the immunity provided in section 3-106 of the Immunity Act was not applicable for two reasons. First, section 3-106 only immunized against injury that occurred in a recreational facility and the defendant's field house was an educational facility, not a recreational facility. Second, section 3-106 only immunized against injury from a "condition of the property" and the failure to create a safe pedestrian walkway through the field house was not such a condition. The plaintiff also argued that the immunity provided in section 3-108 of the Immunity Act was not applicable. The plaintiff noted that section 3-108 provided immunity for a failure to properly supervise an activity. The plaintiff argued that the defendant's negligence was not based on a failure to supervise, but on the failure to properly prepare the field house for the track meet by providing a safe pedestrian walkway.

¶ 16    The plaintiff further argued that the defendant's attempt to relieve itself of liability for willful and wanton conduct because it did not have notice of an unsafe condition was disingenuous because it was withholding evidence in the case. The plaintiff argued that the defendant had video footage that would show when the pole vault pole was placed in the walkway and how long it had been there before the plaintiff tripped over it. The failure to produce this evidence created a question of fact as to whether the defendant should have known of the dangerous condition. Finally, the plaintiff argued that the defendant's failure to provide a safe ingress and egress for spectators at the track meet was willful and wanton and its failure to provide surveillance video footage created a question of fact as to the recklessness of its conduct.

¶ 17    On October 24, 2019, the defendant filed a reply. The defendant noted that, in her response, the plaintiff argued that section 3-108 did not bar her claim because it was based on a failure to properly prepare the field house for the track meet and not on a failure to supervise. The defendant argued that any claim based on the alleged failure to properly prepare the field house would be barred by sections 2-109 and 2-201 of the Immunity Act (745 ILCS 10/2-109, 201 (West 2018)), which provided absolute immunity, for both negligence and willful and wanton conduct, to public entities in their performance of policy-making and discretionary functions.

¶ 18    The plaintiff filed a motion to strike the argument related to sections 2-109 and 2-201 of the Immunity Act because it was not raised in the defendant's motion for summary judgment. The trial court denied the motion to strike and granted the plaintiff an opportunity to file a sur-response. In her sur-response, the plaintiff argued that sections 2-109 and 2-201 were not applicable because setting up the field house for the track meet was not a policy-making decision or a discretionary act.

¶ 19    On October 28, 2019, the plaintiff filed a motion to compel the defendant to produce all relevant video surveillance footage taken at the field house on the morning of February 27, 2016. The plaintiff stated that the defendant had only produced video surveillance footage starting at 8:39:12 a.m. on that date.  The plaintiff acknowledged that, at a discovery deposition, the defendant indicated that it was no longer in possession of any other video surveillance footage from that date. The plaintiff argued that the defendant's failure to produce the requested video had prejudiced her in the prosecution of her case.  The plaintiff requested an order that the defendant produce the complete unaltered video surveillance footage from the morning of the plaintiff's fall or produce an affidavit that such video footage was destroyed.

¶ 20    On November 15, 2019, following a hearing on the motion to compel, the trial court granted the plaintiff's motion.  The trial court ordered the defendant to produce, by December 6, 2019, a sworn verification identifying the specific time stamps on the video surveillance footage produced and stating that the video already produced was the only surveillance footage in its possession. Thereafter, on that same day, a hearing proceeded on the defendant's motion for summary judgment.   Following argument, the trial court stated that it would take the matter under advisement and issue a written ruling at a later time.

¶ 21    On November 27, 2019, the trial court entered a written ruling granting the defendant's motion for summary judgment.  The trial court stated that section 3-106 provided the defendant immunity from liability for the plaintiff's injury.  The trial court found that at the time of the injury the field house was being used for recreational purposes and the misplacement of the pole vault pole was a condition of the property within the meaning of section 3-106.  Further, the trial court found that section 3-108 and sections 2-109 and 2-201 also immunized the defendant from liability for its alleged negligence.

¶ 22    In addition, the trial court found that there was no evidence to suggest that the defendant was guilty of willful and wanton conduct.  The trial court noted that willful and wanton conduct was defined as a course of action which showed an actual or deliberate intention to cause harm or an utter indifference or conscious disregard for the safety of others.  The trial court found that there was no evidence that the defendant knew of the dangerous condition, that prior injuries occurred, or that relevant safety features were ignored or removed.  Accordingly, because the Immunity Act provided immunity on the claim for negligence, and there was no evidence to support a finding of willful and wanton conduct, the trial court granted summary judgment in favor of the defendant on both counts of the plaintiff's complaint.  Thereafter, the plaintiff filed a timely notice of appeal.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, the plaintiff argues that the trial court erred in granting summary judgment in favor of the defendant.  Summary judgment is proper when the pleadings, depositions, affidavits, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2018).  A court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent.  *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).  Although a plaintiff is not required to prove his or her case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle him or her to a judgment.  *Oliveira-Brooks v. Re/Max International, Inc.*, 372 Ill. App. 3d 127, 134 (2007).  Our review is *de novo*.  *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

¶ 25                             A. Motion to Compel

¶ 26    The plaintiff first argues that summary judgment was premature because the defendant had not yet complied with the motion to compel.  The plaintiff asserts that Flanagan's deposition testimony established that there was additional video from the morning of the incident.  Thus, the plaintiff argues that if the defendant had provided verification that the video footage it had produced in discovery was the only footage in its possession, she could present an adverse inference instruction to the jury at trial and she could add a claim for negligent spoliation of evidence.  Alternatively, the plaintiff argues that, if the defendant produced additional video footage from earlier on the morning of the track meet, it could show that the pole was lying in the walkway for an unreasonable period of time and help establish her claim for willful and wanton conduct.

¶ 27    The plaintiff's attempt to create a genuine issue of material fact by arguing that the defendant did not comply with the motion to compel is without merit.  Flanagan's deposition testimony did not establish that there was additional video footage from the morning of the incident.  During his testimony, Flanagan stated that "I do have knowledge of [the pole] being placed there by another person, and I'm not sure who that person was."  He said he had this knowledge from viewing the video.  The plaintiff's counsel then asked Flanagan to describe "what [he] viewed on the video footage."  Flanagan responded:

> "Sure.  The video showed at the angle overseeing partial of the pole vault area [that is] taped off with some poles laying horizontally with the lanes that are going.  You can see on the opposite side a chair and [there is] a pole vault pole by that chair.  As it spins around, you can see participants with their pole vault poles in their hand.  And it continues on to spin around and that's where you see [the plaintiff] on the ground."

Flanagan was then asked, "From the video did you see the pole vault poles being placed on the ground? Flanagan responded, "No."

¶ 28 The foregoing testimony does not establish that Flanagan saw any video other than what was produced. The video he described was the video that was produced. We acknowledge his testimony that, from viewing the video, he knew that someone placed the pole on the ground, and his further testimony that the video did not show the pole being placed on the ground. However, it is axiomatic that someone placed the pole on the ground. His statement that he knew someone placed the pole on the ground does not establish the existence of any additional video. The plaintiff had the opportunity to further question Flanagan about this issue at his deposition but failed to establish that he watched any video other than what was produced. As such, the plaintiff's mere speculation that there may be additional video is not enough to create a genuine issue of material fact sufficient to survive a motion for summary judgment. *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007).

¶ 29 Moreover, other evidence refutes the plaintiff's assertion that additional video exists. Specifically, the record shows that in response to the plaintiff's written discovery request, the defendant produced video footage from the field house taken on the morning of the plaintiff's injury. Illinois Supreme Court Rule 214 (eff. July 1, 2018) required the defendant to furnish an affidavit that the production was complete. Although a copy of the affidavit was not included in the record on appeal, during the hearing on the motion to compel defense counsel stated that it had been furnished to the plaintiff and the plaintiff did not argue otherwise. Furthermore, defense counsel stated at the hearing that there was no other video available from that morning. The attorney explained that the video cycles every 30 days and whatever was not produced in discovery had already been taped over.

¶ 30    In addition, the plaintiff's claim that summary judgment was premature is unpersuasive for procedural reasons as well.  At the hearing on the motion to compel, the trial court asked the plaintiff if she was relying on the evidence sought in the motion to compel to advance any arguments under the motion for summary judgment.  The plaintiff stated that she was not, and she did not move to continue the hearing on the motion for summary judgment pending the defendant's compliance with the order on the motion to compel.  After the trial court granted the motion for summary judgment, the plaintiff also did not file a motion to reconsider, advancing the argument that the motion was premature in the absence of the defendant's compliance with the motion to compel.  Under these circumstances, where the plaintiff did not move to continue or object at the hearing on the motion for summary judgment, or file a motion to reconsider following the entry of summary judgment, the plaintiff cannot now argue that the motion for summary judgment was premature.  *Pellico v. Mork*, 2018 IL App (2d) 170468, ¶ 20 (the invited error doctrine prohibits a party from proceeding in one manner in the trial court and then arguing on appeal that it was error).

¶ 31    Finally, the plaintiff cannot rest on her delay in filing the motion to compel to create a genuine issue of material fact.  Flanagan's deposition testimony was taken on August 29, 2018.  The parties agreed to close discovery on July 31, 2019, almost a year later.  The plaintiff did not file her motion to compel until three months after discovery was closed.  If the plaintiff believed that Flanagan's testimony established the existence of an additional video, she should have filed her motion to compel sooner and not agreed to close discovery.  See *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 72 (observing that trial courts ought not allow litigants to remain mute, lose on a motion and then frantically collect evidence to show the court's ruling was erroneous).

¶ 32                                B. Tort Immunity

¶ 33    The plaintiff next argues that the trial court erred in finding that statutory immunity barred her claims.  The Tort Immunity Act "serves to protect local public entities and public employees from liability arising from the operation of government."  *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).  "By providing immunity, the legislature sought to prevent the diversion of funds from their intended purpose to the payment of damages claims."  *Malinksi v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 7.  "Unless an immunity provision applies, municipalities are liable in tort to the same extent as private parties."  *Van Meter*, 207 Ill. 2d at 368-69.

¶ 34    The plaintiff's first contention is that the trial court erred in finding her negligence claim barred by section 3-106 of the Immunity Act.  Section 3-106 of the Immunity Act provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."  745 ILCS 10/3-106 (West 2018).

The Immunity Act is strictly construed against the public entity seeking immunity.  *Trtanj v. City of Granite City*, 379 Ill. App. 3d 795, 803 (2008).

¶ 35    The plaintiff argues that section 3-106 is not applicable because the pole vault in the walkway was not a "condition" of the property where the injury occurred. [1]  In *McCuen v. Peoria*

---

[1]Although the plaintiff also argued in the trial court that the field house was not "intended or permitted to be used for recreational purposes," she has not raised that argument on appeal and

*Park District*, 163 Ill. 2d 125 (1994), our supreme court addressed the meaning of the word "condition" as used in section 3-106 of the Immunity Act. In that case, while visiting a park owned and operated by the Peoria Park District, McCuen climbed onto a hayrack to take a mule-drawn hayrack ride. *Id.* at 126. While the park district employee was harnessing the mules, he slapped a strap over the body of one of the mules, which caused the mule team to run off with a driverless hayrack. *Id.* at 126-27. McCuen was thrown from the hayrack and injured. She sued the park district for negligence. *Id.* at 127.

¶ 36    On appeal, in determining whether the driverless hayrack was a "condition" of public property within the meaning of section 3-106, our supreme court held as follows:

> "We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3-106. Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. The handling of the mule team does not relate to the condition of the hayrack itself. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." *Id.* at 129.

"*McCuen* illustrates that section 3-106 immunizes a defendant from liability in negligence where the property itself is unsafe, but that section 3-106 does not immunize the defendant for unsafe activities conducted upon otherwise safe property." *Vilardo v. Barrington Community School Dist. 220*, 406 Ill. App. 3d 713, 722 (2010).

---

any such argument is thus forfeited. See Ill. S. Ct. Rule 341(h)(7) (eff. May 25, 2018) (all arguments not raised in the appellant's appellate brief are forfeited).

¶ 37    The plaintiff argues that, as in *McCuen*, section 3-106 is not applicable because she does not allege that the pole vault pole itself was defective, dangerous, or negligently maintained. Rather, she alleges that the mishandling of the pole vault pole by the defendant's employees caused her injuries. We find the plaintiff's reliance on *McCuen* unpersuasive. In *Moore v. Chicago Park District*, 2012 IL 112788, our supreme court subsequently clarified its holding in *McCuen*.

¶ 38    In *Moore*, Sylvia Lee Moore was injured when she attempted to step over a pile of snow and ice that accumulated near the curb of a parking lot due to plowing by park district employees. The plaintiff, Roberta Minor Moore, as special administrator of the estate of Sylvia Lee Moore, sued for negligence, asserting that the park district's activities in negligently shoveling and plowing snow into mounds on its parking lot and walkway created an unnatural condition for pedestrians to walk upon or step over. *Id.* ¶ 4. The certified question on appeal was whether the accumulation of snow and ice was a "condition" of the public property within the meaning of section 3-106 of the Immunity Act. *Id.* ¶ 3. In answering this question, the supreme court reasoned that the snow was a naturally occurring substance when it fell on the property and did not become an "activity" when it was shoveled or plowed but, rather, remained a condition of the property. *Id.* ¶ 16.

¶ 39    The *Moore* court explained that, in *McCuen*, while the hayrack itself remained unchanged, it was misused by a park district employee so that it was no longer safe. As such, any danger presented by the hayrack was due to the actions of the employee and not the condition of the hayrack, and section 3-106 did not apply. *Id.* ¶ 17. In contrast to *McCuen*, the *Moore* court held that there was no misuse of property that contributed to Moore's injury; rather, the condition of the property was simply changed due to the new condition of the snow and ice located thereon, such that section 3-106 immunity was applicable. *Id.* In other words, it was the unsafe condition

of the property itself that caused the injury rather than the park district's actions in using snow removal equipment, unlike in *McCuen* where McCuen's injuries were caused by the negligent action of the park district employee in improperly handling a mule team.

¶ 40    In the present case, the circumstances are closer to *Moore* than *McCuen*. Similar to the snow in *Moore*, when the pole vault was placed in the pedestrian pathway it became a condition of the property. Unlike in *McCuen*, the plaintiff does not allege that her injury was caused by any dangerous use of the pole by the defendant's employees. Rather, the plaintiff's complaint alleges negligence based on failing to inspect, monitor, warn, and maintain a safe walkway, and failing to provide a barrier, or security personnel. The negligent action of the defendant's employees alleged by the plaintiff is that they essentially allowed a dangerous condition to exist without correcting it. This is not sufficient to remove the plaintiff's claim from the purview of section 3-106 of the Immunity Act. *Id.* ¶¶ 16-17.

¶ 41    The plaintiff acknowledges that movable non-fixed items may constitute a condition of public property. See *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, ¶ 11. However, she argues that in such cases, the movable items were in their intended locations, citing *Grundy*, 2011 IL App (1st) 102686, ¶ 15 (temporary warning sign was in its intended location but still caused tripping injury), and *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 501 (1997) (plaintiff tripped on concrete parking abutment that blocked a walkway). The plaintiff argues that section 3-106 is not applicable because, in this case, the pole vault pole was not intended to be in the pedestrian walkway away from the stand where the poles were to be stored. She argues that this is similar to *McCuen*, where the driver was not intended to be separated from the hayrack and the mule team.

¶ 42    We find the plaintiff's argument unpersuasive.  First, in *Sylvester*, although the concrete parking abutment was deliberately placed where it was located, as it required either several men or a forklift to move (*id.* at 505), it was still misplaced as it was on a walkway and not in a parking lot.  See *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 41 (2003) (noting that in *Sylvester*, the plaintiff tripped on a "misplaced, concrete car stop").  Further, section 3-106 has been found to provide immunity when the item that caused injury was not in its intended location.  See, *e.g.*, *Goodwin v. Carbondale Park District*, 268 Ill. App. 3d 489, 490-92 (1994) (plaintiff injured when the bicycle he was riding collided with a tree that had fallen across the bike path); *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337, 338-340 (1988) (plaintiff injured by broken glass on football field).  Moreover, the plaintiff has not cited any case law that discusses immunity under section 3-106 in terms of whether a movable item was in its intended location.  Under section 3-106, one of the issues that must be determined is whether the hazard was a "condition" of the property.  Based on our supreme court's decision in *Moore*, we hold that the pole vault pole on the ground in the pedestrian pathway was a condition of the property.  Accordingly, the trial court did not err in granting summary judgment on count I of the plaintiff's amended complaint.  Because summary judgment on count I was proper based on section 3-106 of the Immunity Act, we need not address the plaintiff's additional arguments relating to whether summary judgment was also proper under sections 3-108, 2-109, and 2-201 of the Immunity Act.

¶ 43                              C. Willful and Wanton Conduct

¶ 44    Finally, the plaintiff argues that the trial court erred in granting summary judgment for the defendant on her claim for willful and wanton conduct.  Section 3-106 of the Immunity Act provides an exception for willful and wanton conduct.  "Willful and wanton" is defined in the Immunity Act as "a course of action which shows an actual or deliberate intention to cause harm

or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2018). "This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." *Id.*

¶ 45 Utter indifference to, or conscious disregard for, the safety of others consists of more than mere inadvertence, incompetence, or unskillfulness. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 637 (1995). Willful and wanton conduct requires a conscious choice by a defendant to either cause harm or to engage in a course of action with knowledge that it involves a risk of serious danger to another. *Doe v. Bridgeforth*, 2018 IL App (1st) 170182, ¶ 46. "One must consider the totality of the circumstances in deciding whether a defendant acted with utter indifference or conscious disregard." *In re Estate of Stewart*, 2016 IL App (2d) 151117, ¶ 75. "Ordinarily, whether specific acts constitute willful and wanton conduct is a question of fact that is reserved for the jury." *Bielema ex rel. Bielema v. River Bend Community School District No. 2*, 2013 IL App (3d) 120808, ¶ 12. "However, where the record shows absolutely no evidence that the defendant displayed either an utter indifference to or a conscious disregard for the plaintiff's safety, then the court may properly decide the issue as a matter of law." *Mitchell v. Special Education Joint Agreement School District No. 208*, 386 Ill. App. 3d 106, 111 (2008).

¶ 46 In the present case, the plaintiff's allegations do not establish a deliberate intention to cause harm or an utter indifference to or conscious disregard for the safety of others. There is no evidence to show that the defendant knew about the alleged dangerous condition and failed to correct it. See, *e.g.*, *Muellman v. Chicago Park District*, 233 Ill. App. 3d 1066, 1069 (1992) (willful and wanton conduct found to exist where a public entity knew of a dangerous condition yet took no action to correct the condition). Further, while we disagree with the defendant's assertion at oral

argument that a prior injury on the same day would be required to establish willful and wanton conduct, we agree that evidence of previous injuries on that day or at previous track meets could have created a genuine issue of material fact on the issue. See, *e.g.*, *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 557-58 (1995) (willful and wanton conduct found where a public entity was aware of prior injuries caused by a dangerous condition but took no action to correct it). Here, however, the plaintiff did not present evidence of any other injuries on the day of the track meet at issue or at any previous track meets.

¶ 47 The evidence also does not show an utter disregard for safety as the defendant's employees taped off designated areas and provided rooms for the athletes to store their belongings and a stand for the athletes to store their pole vault poles. That these precautions did not prevent injury does not establish willful and wanton conduct. Mere ineffectiveness does not establish a course of action demonstrating that a defendant was utterly indifferent or consciously disregarded the safety of others. See, *e.g.*, *Bielema*, 2013 IL App (3d) 120808, ¶ 19 (affirming grant of summary judgment to school district on claim for willful and wanton conduct; finding district "took some action to remedy the danger posed by" a spilled liquid even though school principal's husband "could have done more to warn" the student of the spill). Accordingly, the standard of willful and wanton conduct simply cannot be met in this case.

¶ 48                                    III. CONCLUSION

¶ 49 For the reasons stated, the judgment of the circuit court of Kendall County is affirmed.

¶ 50 Affirmed.